961 So.2d 820 (2007)
CONSOLIDATED CONSTRUCTION COMPANY OF ALABAMA and Hartford Accident and Indemnity Company
v.
METAL BUILDING COMPONENTS, L.P., d/b/a MBCI; David Sorrells; and Gregory M. Horne.
1031498.
Supreme Court of Alabama.
January 12, 2007.
Michael L. Fees and Allen L. Anderson of Fees & Burgess, P.C., Huntsville, for appellants.
Marc James Ayers of Bradley Arant Rose & White, LLP, Birmingham; and Greg Revera of Bradley Arant Rose & White, LLP, Huntsville, for appellee Metal Building Components, Inc., d/b/a MBCI.
Larry S. Logsdon of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for appellees David Sorrells and Gregory M. Horne.
PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(F), Ala. R.App. P.
*821 NABERS, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
HARWOOD and BOLIN, JJ., concur specially.
BOLIN, Justice (concurring specially).
Consolidated Construction Company of Alabama ("Consolidated") and Hartford Accident and Indemnity Company ("Hartford") appeal from the trial court's judgment enforcing a claim against Consolidated's public-works-payment bond. Consolidated also appeals from the trial court's judgment in favor of David Sorrells and Gregory M. Horne on its third-party claims against Sorrells and Horne arising out of their ownership interest and operation of D.S. Sorrells & Company.
In 2000, Consolidated entered into a contract with the Madison County Board of Education ("the Board") to build the Endeavor Elementary School. In accordance with the requirements of § 39-1-1, Ala.Code 1975, Consolidated supplied a payment bond in favor of the Board with Hartford as the surety.[1] Subsequently, Consolidated executed a purchase order with D.S. Sorrells & Company. D.S. Sorrells then ordered materials from Metal Building Components, L.P., d/b/a MBCI.
D.S. Sorrells paid each invoice owed MBCI until April 2001 when a check from D.S. Sorrells to MBCI in the amount of $58,507.72 was returned due to insufficient funds. No payment was made by D.S. Sorrells to cover the returned check. D.S. Sorrells ceased doing business shortly thereafter. At the time D.S. Sorrells ceased operations, it owed MBCI $65,221.78.
On October 31, 2001, MBCI made a demand for payment on the bond against Consolidated and Hartford pursuant to § 39-1-1. No payment was made on the demand, and on December 27, 2001, MBCI sued D.S. Sorrells, Consolidated, and Hartford to recover amounts owed for the materials that had been furnished by MBCI. Specifically, MBCI alleged (1) that D.S. Sorrells was liable for breach of contract; (2) that D.S. Sorrells and Consolidated were liable under the Alabama Prompt Payment Act, § 8-29-1 et seq., Ala.Code 1975; (3) that Consolidated was liable to pay the amounts owed MBCI from its payment bond pursuant to § 39-1-1; and (4) that Hartford was also liable to pay MBCI on the payment bond pursuant to § 39-1-1. Consolidated filed a third-party complaint against D.S. Sorrells and David Sorrells and Greg Horne, as *822 officers, directors, and shareholders of D.S. Sorrells. In its third-party complaint, Consolidated asserted claims of fraudulent misrepresentation and fraudulent suppression against Sorrells and Horne[2] and Consolidated sought to pierce D.S. Sorrells's corporate veil. We note that Sorrells was president of D.S. Sorrells and Horne was the secretary/treasurer.
MBCI moved for a summary judgment. Consolidated and Hartford filed motions for a partial summary judgment, asking the trial court to dismiss all of MBCI's claim asserted under § 39-1-1. In support of their argument, Consolidated and Hartford argued that § 39-1-1 does not allow a materialman to a materialman to recover on a public-works-payment bond. Consolidated also filed a motion for a partial summary judgment with regard to MBCI's claims asserted under § 8-29-1 et seq., Ala.Code 1975. Sorrells and Horne each moved for a summary judgment with regard to Consolidated's third-party claims against them.
The trial court denied MBCI's motion for a summary judgment and denied Consolidated's and Hartford's motions for a partial summary judgment as to MBCI's claims under § 39-1-1. The trial court granted Consolidated's motion for a partial summary judgment with regard to MBCI's claims under § 8-29-1. Also, the trial court denied Sorrells's and Horne's summary-judgment motions.
Following a bench trial, the trial court entered a final judgment on May 14, 2004. In its order, the trial court found that MBCI had not been paid for materials it furnished for use in the construction of the Endeavor Elementary School building. The court concluded that § 39-1-1 allows a materialman to a materialman to recover on a public-works-payment bond. The court also determined that even if § 39-1-1 did not protect a materialman to a materialman, D.S. Sorrells was a subcontractor to Consolidated; therefore, MBCI, as a materialman to a subcontractor, would be able to recover from Consolidated and Hartford under their interpretation of § 39-1-1. The court found that Sorrells and Horne had made material misrepresentations to Consolidated, but the court concluded that Consolidated had failed to present sufficient evidence to pierce the corporate veil.
The trial court ordered: (1) that MBCI recover $109,997.02 in principal and attorney fees from D.S. Sorrells, Consolidated, and Hartford (jointly and severally); (2) that MBCI recover $23,446.12 in interest from D.S. Sorrells; (3) that MBCI recover $9,542.04 in interest from Consolidated and Hartford; (4) that Consolidated recover from D.S. Sorrells any amounts Consolidated *823 pays MBCI in satisfaction of the final judgment. The trial court also entered a final judgment in favor of Sorrells and Horne. Consolidated and Hartford appeal.
The trial court correctly entered a judgment in favor of MBCI as to MBCI's right to recover under the payment bond supplied by Consolidated in favor of the Board with Hartford as the surety. However, I write specially to address the trial court's judgment in favor of Sorrells and Horne on Consolidated's fraud claim based on the insufficiency of the evidence to warrant piercing the corporate veil.
The trial court expressly found that there was insufficient evidence to pierce the corporate veil, and it entered a judgment in favor of Sorrells and Horne on Consolidated's claims. However, the court found that Sorrells and Horne individually made material misrepresentations and concealed information on behalf of D.S. Sorrells. The trial court stated in its judgment:
"D.S. Sorrells, acting through David Sorrells and Greg Horne, implicitly and expressly represented to Consolidated, on a repeated basis in early 2000 and up to the trial of this civil action, that D.S. Sorrells intended to pay, and had in fact paid, all monies owed by it to MBCI for materials supplied for use in the Endeavor Elementary construction project. This is a material representation that D.S. Sorrells knew to be false.
"When Consolidated became aware that MBCI was claiming it had not been fully paid by D.S. Sorrells for materials used in connection with the Endeavor Elementary construction project, D.S. Sorrells implicitly and expressly represented to Consolidated that the claim was a mere misunderstanding or accounting error. This is a material representation that D.S. Sorrells knew to be false.
"In the summer of 2001 D.S. Sorrells repeatedly represented to Consolidated that any misallocations of monies which should have been applied to D.S. Sorrells' indebtedness to MBCI in connection with the Endeavor Elementary construction project were being remedied by either D.S. Sorrells or MBCI or both. These are material representations D.S. Sorrells knew to be false.
"D.S. Sorrells concealed from Consolidated the material fact that D.S. Sorrells was having difficulty, as early as late 2000, paying any number of creditors, including MBCI. D.S. Sorrells also concealed from Consolidated the material fact that D.S. Sorrells was utilizing payments from Consolidated, that were to be used for the Endeavor Elementary construction project, for other purposes.
". . . .
"Consolidated and Hartford further stipulated at trial that each were notified by MBCI of MBCI's claims on the Payment Bond by certified mail on Oct. 31, 2001.
". . . .
"This Court has found that D.S. Sorrells, acting through David Sorrells and Greg Horne, implicitly and expressly made material misrepresentations to Consolidated.
"These false and material misrepresentations made by D.S. Sorrells were made willfully with knowledge of their falsity or were made recklessly without knowledge of the truth or falsity thereof; and were made with the intention to induce Consolidated to continue paying D.S. Sorrells substantial sums rather than allowing Consolidated to invoke its right to pay MBCI directly.
"Moreover, D.S. Sorrells concealed from Consolidated the material fact that *824 D.S. Sorrells was having difficulty in paying its creditors and was misusing payments from Consolidated for purposes in contradiction of the contract between D.S. Sorrells and Consolidated.
"This Court concludes that D.S. Sorrells had a duty to disclose these material facts and that Consolidated, without knowledge of such material facts, acted to its injury by continuing to pay D.S. Sorrells substantial sums rather than paying the suppliers of D.S. Sorrells directly."
A corporate officer who commits fraud will not be shielded from liability because he used the instrumentality of the corporation to commit the fraud. "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774, 775 (Ala.1986).
"It is well-established that a director of a corporation `may not participate in a tort perpetrated through the agency of a corporation, or in a fraudulent injury to another, without being civilly responsible.' Rudisill Soil Pipe Co. v. Eastham Soil Pipe & Foundry Co., 210 Ala. 145, 150, 97 So. 219 (1923). See, Alabama Music Co. v. Nelson, 282 Ala. 517, 213 So.2d 250 (1968); Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358 (1956); Finnell v. Pitts, 222 Ala. 290, 132 So. 2 (1930); Chandler v. Hunter, 340 So.2d 818 (Ala. Civ.App.1976). Fletcher's Cyclopedia of Corporations, at 202-203 (1975), explains the rule as follows:
"`It is thoroughly well settled that a man is personally liable for all torts committed by him, consisting in misfeasance  as fraud, conversion, acts done negligently, etc.  notwithstanding he may have acted as the agent or under directions of another. And this is true to the full extent as to torts committed by the officers or agents of a corporation in the management of its affairs. The fact that the circumstances are such as to render the corporation liable is altogether immaterial. . . . Corporate officers are liable for their torts, although committed when acting officially. In other words, corporate officers, charged in law with affirmative official responsibility in the management and control of corporate business, cannot avoid personal liability for wrongs committed by claiming that they did not authorize and direct that which was done in the regular course of that business, with their knowledge and with their consent or approval, or such acquiescence on their part as warrants inferring such consent or approval.'
"This rule does not depend on the same grounds as `piercing the corporate veil,' that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization. See L.C.L. Theatres v. Columbia Pictures Indus., 619 F.2d 455 (5th Cir.1980)."
Crigler v. Salac, 438 So.2d 1375, 1379-80 (Ala.1983).
Sorrells's and Horne's status as corporate officers did not shield them from individual liability in tort for their actions. As the Crigler Court noted, individual liability in tort is not dependent upon the same grounds as piercing the corporate veil. The corporate veil is pierced to prevent a shareholder, who is not normally liable for corporate debts or liabilities, from hiding behind the corporate shield when the shareholder is operating the corporation as an alter ego. Econ Marketing, Inc. v. Leisure American Resorts, Inc., 664 So.2d 869 (Ala.1994). However, where a tort *825 action is brought against an officer of the corporation, there is no need to pierce the corporate veil, and the officer will be held liable if the elements of the tort are satisfied. Although the trial court concluded that there was insufficient evidence to pierce the corporate veil, it expressly found that Sorrells and Horne had made fraudulent misrepresentations to Consolidated and that they owed Consolidated a duty to disclose certain information.
To establish the elements of fraudulent misrepresentation Consolidated had to show: "(1) that the representation was false, (2) that it concerned a material fact, (3) that it relied on the false representation, and (4) that actual injury resulted from that reliance." Boswell v. Liberty Nat'l Life Ins. Co., 643 So.2d 580, 581 (Ala.1994).
To establish fraudulent suppression, Consolidated had to show: "(1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act [or to refrain from acting]; and (4) that the defendant's action resulted in harm to the plaintiff.'" Bethel v. Thorn, 757 So.2d 1154, 1162 (Ala.1999)(quoting Booker v. United American Ins. Co., 700 So.2d 1333, 1339 n. 10 (Ala.1997)).
"The question whether a party had a duty to disclose is a question of law to be determined by the trial court." Barnett v. Funding Plus of America, Inc., 740 So.2d 1069, 1074 (Ala.1999). In Armstrong Business Services, Inc. v. AmSouth Bank, 817 So.2d 665, 677 (Ala.2001), this Court held:
"The trial court must consider and apply the following factors in determining whether, under the particular circumstances, a duty to disclose exists: `(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.'"
(Quoting State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 842-43 (Ala.1998).)
With regard to the duty to disclose, this Court has stated:
"A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of duty to disclose is not fraudulent. . . .
". . . .
"This Court has stated that whether one has a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case. . . . When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested."
Mason v. Chrysler Corp., 653 So.2d 951, 954-55 (Ala.1995).
In the present case, Consolidated contacted D.S. Sorrells after it became aware that MBCI had not been paid for materials used in connection with the Endeavor Elementary School project. The trial court found that Sorrells and Horne then made false statements regarding D.S. Sorrells's payments to MBCI, representing that the nonpayment had been the result of an accounting error. Nevertheless, Consolidated has failed to prove the element of detrimental reliance. Testimony from Consolidated's vice president indicates that when a supplier complained to Consolidated that it was not getting paid by a subcontractor, *826 Consolidated would verify that fact and then would issue a joint payee check to both the subcontractor and the supplier in order to ensure that the supplier was paid. Consolidated did not become aware of D.S. Sorrells's failure to pay MBCI until June or July 2001. At that time, Consolidated had already paid D.S. Sorrells all that it was owed. The last payment from Consolidated[3] to D.S. Sorrells was on March 28, 2001, several months before the fraudulent misrepresentation occurred.
Testimony from Consolidated's senior estimator indicated that Consolidated's last payment to D.S. Sorrells was on March 28, 2001. He stated that he contacted D.S. Sorrells in June or July 2001, after MBCI refused to give Consolidated a warranty on the material it supplied to the project. The estimator testified that Consolidated had no way of knowing that D.S. Sorrells had been falling behind in its payments to materialmen "and nobody bothered to voluntarily send us any information saying these invoices were not being paid so we're going to have a claim." He stated that if Consolidated had known earlier that D.S. Sorrells was not paying the materialmen, a two-party check would have been issued. However, he admitted that the last payment to D.S. Sorrells was in March 2001 and that Consolidated did not know MBCI had not been paid until the summer of 2001. Therefore, Consolidated did not rely on the fraudulent misrepresentations in paying D.S. Sorrells, because Consolidated's last payment to D.S. Sorrells was issued in March 2001, at least three or four months before the fraudulent misrepresentations by D.S. Sorrells.
I recognize that the trial court made a specific finding of fact that Sorrells and Horne falsely represented to Consolidated on a repeated basis in early 2000 and up to the trial of this civil action, that D.S. Sorrells intended to pay, and had in fact paid, all moneys owed to MBCI for the Endeavor Elementary School project. However, this particular finding contradicts other findings of the trial court. Specifically, the trial court found that D.S. Sorrells had failed to pay MBCI for invoices totaling $65,221.78. Those invoices begin with a shipping date for materials of February 1, 2001. The trial court also found, as evidenced by the contract between MBCI and D.S. Sorrells, that MBCI had 30 days in which to pay MBCI. D.S. Sorrells did not owe MBCI for any bills before those submitted into evidence for materials supplied with a beginning shipping date of February 1, 2001. The evidence indicates that D.S. Sorrells paid MBCI for each invoice until April 2001, when a check from D.S. Sorrells to MBCI in the amount of $58,507.72 was returned due to insufficient funds, and by the time D.S. Sorrells ceased operations, it showed a balance of $65,221.78 owed to MBCI.
With regard to fraudulent suppression, the trial court stated in its order that D.S. Sorrells concealed from Consolidated that it was having difficulty in paying its creditors and that it was misusing payments from Consolidated for purposes in contradiction of the contract between D.S. Sorrells and Consolidated. The trial court found that Sorrells and Horne were presented with multiple inquiries from Consolidated in the summer of 2001 regarding payments made by D.S. Sorrells to MBCI for the material used in the Endeavor Elementary School project. Those inquiries required Sorrells and Horne to disclose fully the correct status of the payments *827 made to MBCI. Until Consolidated requested information from D.S. Sorrells, D.S. Sorrells did not have a duty to disclose any information regarding its payments to MBCI or its own financial status. By the summer of 2001, Consolidated had already paid D.S. Sorrells; therefore, Consolidated was not induced to act or did not refrain from acting based on the false information regarding D.S. Sorrells's payments to MBCI. Furthermore, the trial court expressly found that Consolidated had failed to establish its theory that some or all of the amounts claimed by MBCI on the Endeavor Elementary School project had been paid by D.S. Sorrells and then inappropriately applied by MBCI to other debts D.S. Sorrells owed to MBCI for other construction projects.
Although the trial court entered a judgment in favor of Sorrells and Horne on Consolidated's fraud claims based on insufficient evidence to warrant piercing the corporate veil, the trial court should have found in favor of Sorrells and Horne on the grounds that Consolidated failed to prove all the elements of fraudulent misrepresentation and fraudulent suppression. This Court can affirm the judgment of the trial court even if we disagree with the trial court's reasoning in entering the judgment, so long as the judgment itself is proper. Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333 (Ala.1989).
HARWOOD, J., concurs.
NOTES
[1] In general, when a person has provided labor or materials or has supplied services on private construction projects, they are entitled to file a lien against the private property and subsequently foreclose on the property, if not paid for those services. See § 35-11-210, Ala.Code 1975. However, § 35-11-210, the mechanic's or materialman's lien statute, does not apply to public property. Martin v. Holtville High School Bldg., 226 Ala. 45, 145 So. 491 (1933)(public-school building was not subject to foreclosure sale under the predecessor to § 35-11-210). The Alabama Legislature provided a remedy when it codified specific provisions to ensure that materialmen receive full payment for labor or materials supplied to a public-works project. § 39-1-1. Alabama's statute was adopted in 1927 and was originally patterned after a federal act enacted in 1894 called the Heard Act. Ch. 280, 28 Stat. 278 (1894) (repealed); see also State v. Southern Sur. Co., 221 Ala. 113, 127 So. 805 (1930) (discussing the essential provisions of the state and federal payment-bond statutes existing in 1930). Alabama first amended its public-works-payment-bond statute in 1935 to pattern it after a federal act called the Miller Act (enacted in 1935 to rectify inadequate protections in the Heard Act). See 40 U.S.C. §§ 3131-3133 (formerly 40 U.S.C. §§ 270a-270b). State public-works-payment-bond statutes are often referred to as "little Miller Acts."
[2] Consolidated's misrepresentation claim stated:

"Sorrells, acting individually and on behalf of Horne, intentionally, recklessly and/or innocently misrepresented to Consolidated that: (a) the metal roofing materials supplied on the Project would be paid for; (b) all MBCI invoices related to the Project had been paid in full; (c) payments were misallocated to the Fort Payne High School account; and (d) MBCI was reassigning all incorrectly posted invoices to show that all outstanding invoices on the Endeavor School Project were paid in full."
Consolidated's fraudulent-suppression claim stated that Sorrells and Horne owed a duty to Consolidated to disclose that
"a. D.S. Sorrells intended to purchase the metal roofing materials using credit; b. D.S. Sorrells did not intend to pay for the metal roofing materials using the funds paid by the Madison County School Board; c. D.S. Sorrells had an open account with MBCI to which payments would generally be applied without reference to specific projects; d. Payments would be commingled with the Fort Payne High School account; and e. MBCI would not be paid for outstanding invoices on the Project."
[3] Pursuant to this public-works project, the check was written by the Madison County Board of Education, the school system that was building the Endeavor Elementary School after Consolidated presented a voucher to the school system.