991 So.2d 1263 (2008)
Ex parte NOVARTIS PHARMACEUTICALS CORPORATION.
(In re Alabama Medicaid Pharmaceutical Average Wholesale Price Litigation).
Ex parte SmithKline Beecham Corporation d/b/a GlaxoSmithKline.
(In re Alabama Medicaid Pharmaceutical Average Wholesale Price Litigation).
Ex parte AstraZeneca LP and AstraZeneca Pharmaceuticals LP.
(In re Alabama Medicaid Pharmaceutical Average Wholesale Price Litigation).
1070310, 1070311 and 1070312.
Supreme Court of Alabama.
April 18, 2008.
*1266 Matthew H. Lembke, Kevin C. Newsom, Marc James Ayers, and Andrew L. Brasher of Bradley Arant Rose & White, LLP, Birmingham; William D. Coleman and James N. Walter, Jr., of Capell & Howard, P.C., Montgomery; and James W. Parver, Saul P. Morgenstern, Mark D. Godler, and *1267 Samuel Lonergan of Kaye Scholer, LLP, New York, New York, for petitioner Novartis Pharmaceuticals Corporation.
Thomas W. Christian, Sharon D. Stuart, and Deborah Alley Smith of Christian & Small, LLP, Birmingham; William J. Baxley, Joel E. Dillard, and Charles A. Dauphin of Baxley, Dillard, Dauphin, McKnight & Barclift, Birmingham; and D. Scott Wise and Kimberley D. Harris of Davis Polk & Wardwell, New York, New York, for petitioners AstraZeneca Pharmacuticals LP and AstraZeneca LP.
Joseph P.H. Babington and Patrick C. Finnegan of Helmsing, Leach, Herlong, Newman & Rouse, P.C., Mobile; Mark H. Lynch and Ronald G. Dove, Jr., of Covington & Burling, LLP, Washington, D.C.; Chilton D. Varner of King & Spalding, Atlanta, Georgia; and Frederick G. Herold of Dechert LLP, Mountain View, California, for petitioner SmithKline Beecham Corporation d/b/a GlaxoSmithKline.
Troy King, atty. gen.; Caine O'Rear III and Windy C. Bitzer of Hand Arendall, L.L.C., Mobile; Roger L. Bates of Hand Arendall, L.L.C., Birmingham; and Jere L. Beasley, W. Daniel Miles III, and Clinton C. Carter of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for respondent State of Alabama.
Matthew C. McDonald and Kirkland E. Reid of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for amicus curiae Alabama Civil Justice Reform Committee, in support of the petitioners.
Fournier J. Gale III, Stephen C. Jackson, and Scott S. Brown of Maynard, Cooper & Gale, P.C., Birmingham, and Robin S. Conrad, National Chamber Litigation Center, of counsel, for amici curiae Business Council of Alabama and the Chamber of Commerce of the United States of America, in support of the petitioners.
PER CURIAM.
Novartis Pharmaceuticals Corporation ("Novartis"), SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), and AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") petition this Court the for writ of mandamus, asking us to vacate an order of the Montgomery Circuit Court that consolidates for a single trial under Rule 42, Ala. R. Civ. P., 3 of 73 civil fraud cases filed by the State of Alabama against pharmaceutical companies accused of defrauding Alabama's Medicaid program ("Alabama Medicaid"). For the reasons stated below, we dismiss as moot the petition filed by AstraZeneca and deny on the merits the petitions filed by Novartis and GSK.

Background
This is the second time this litigation has been before this Court on petitions for the writ of mandamus. See Ex parte Novartis Pharm. Corp., 975 So.2d 297 (Ala. 2007) ("Novartis I"). This action is part of the Alabama Medicaid Pharmaceutical average wholesale price ("AWP") litigation, in which the State has sued 73 pharmaceutical companies, including AstraZeneca, GSK, and Novartis. According to Novartis, the State alleges that each pharmaceutical company independently "engaged in false, misleading, wanton, unfair, and deceptive acts and practices in the pricing and marketing of their prescription drug products" by reporting false pricing benchmarks and by failing to disclose to Alabama Medicaid the discounts or rebates made available by the pharmaceutical companies to Alabama physicians and pharmacies who dispensed the drugs ("the providers"). Novartis's petition at 2-3. The State asserts that Alabama Medicaid relied on these allegedly false disclosures and deceptive nondisclosures, and that, as a result, Alabama Medicaid compensated the *1268 providers more for the prescription drugs than the drugs actually cost the providers. Id. Thus, according to the State, these fraudulent practices by the pharmaceutical companies caused the State to overpay for Medicaid prescription drugs. The State alleges that each defendant pharmaceutical company marketed this profit margin or "spread" (the difference between what the providers actually paid for the drugs and the amounts reimbursed to providers by Alabama Medicaid) to the providers to encourage them to use that company's products rather than those of its competitors. See generally Novartis I, 975 So.2d 297.
Originally, the State brought a single action against all 73 defendant pharmaceutical companies. Many of the defendant pharmaceutical companies moved to sever the claims against them from those of the other defendants; however, the trial court summarily denied the motions to sever. Forty-four defendant pharmaceutical companies filed mandamus petitions in this Court challenging the trial court's ruling on the severance issue; those petitions resulted in the opinion in Novartis I. At issue in Novartis I was whether joinder of all 73 defendants in a single action was improper under Rule 20(a), Ala. R. Civ. P.,[1] which permits joinder of multiple defendants in a single action when the two requirements of Rule 20(a) are met. First, "the plaintiff must assert against each defendant a `right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences,'" and, second, "there will arise in the action `any question of law or fact common to all defendants.'" Novartis I, 975 So.2d at 299 (quoting Rule 20(a), Ala. R. Civ. P.). In Novartis I, this Court found that the joinder of all the defendants was improper because the facts of the case did not satisfy the first requirement of permissive joinder. We concluded that the State was not asserting a right to relief against all defendants arising out of the same transaction or occurrence; rather, the State was suing each defendant pharmaceutical company for independently committing logically unrelated, yet "coincidentally similar," fraudulent acts that were not part of a conspiracy or a series of coordinated transactions or occurrences. Novartis I. Because the State's claims against the pharmaceutical companies did not satisfy the first requirement of permissive joinder, this Court did not reach the second requirement; thus, it did not decide in Novartis I whether "any question of law or fact common to all defendants [would] arise in the action." See Ala. R. Civ. P. 20(a).
Justice Lyons concurred specially in Novartis I and was joined by Chief Justice Cobb; he noted that the Court's finding of misjoinder in Novartis I did not preclude the prospect of consolidated trials under Rule 42(a), Ala. R. Civ. P.[2] Rule 42(a) vests *1269 trial courts with the discretion to order a joint trial "of any or all the matters in issue" in "actions involving a common question of law or fact," whether or not the right to relief asserted by the plaintiff against all defendants arises out of the same transaction or occurrence. Ex parte Flexible Prods. Co., 915 So.2d 34, 43 (2005). Justice Lyons encouraged the trial court to consider, in response to Novartis I, "the extent to which some number of trials less than 73 might be appropriate," 975 So.2d at 305, but cautioned the trial court against the opaque manner in which it had arrived at an earlier "consolidation" order grouping the defendant pharmaceutical companies into four tracks for trial:
"In the proceedings that led to the present petitions, the trial court, as best I can determine, announced that there would be four trials consisting of four tracks of defendants. The trial court then sought the assistance of two special masters, placing them in what appears to be a procrustean bed of four trials. The special masters' report and any bases therein for selecting the parties for the four trials was not made available to the parties. The trial court entered an order based upon the report in which it created four tracks of defendants without identifying its rationale for clustering various defendants in the various tracks.
"The validity of the prior order of consolidation is not before us because we have found a misjoinder of parties, necessitating our setting aside the trial court's order. I will not speculate on the result that might have been reached had it been necessary to address the order of consolidation. Suffice it to say that, upon remand, a more transparent proceeding not so ostensibly lacking in a principled basis would better serve the ends of justice. For example, if the trial court once again seeks the input of special masters, its announcement of the number of tracks without stating any basis therefor before the masters' participation, its failure to disclose to the parties the recommendation of the masters, and its failure to identify the reasoning upon which any clusters of defendants are created for resolution of this proceeding in any order calling for fewer than 73 trials will substantially increase the State's burden in sustaining its protestations against this Court's micromanagement of the trial court's exercise of discretion should there be a subsequent mandamus proceeding challenging consolidation."
Novartis I, 975 So.2d at 305 (Lyons, J., concurring specially).
After this Court issued its opinion in Novartis I, the trial court ordered a joint trial of AstraZeneca LP and AstraZeneca Pharmaceuticals LP, to begin on February 11, 2008. Astrazeneca did not object to the order scheduling the joint trial of the State's claims against it. Subsequently, the State moved the trial court to consolidate the AstraZeneca trial with 14 similar fraud cases against other defendant pharmaceutical companies, including GSK and Novartis. The various defendant pharmaceutical companies opposed the State's consolidation motion, and the trial court conducted a hearing on the motion. After the hearing, the trial court issued a nine-page order that granted the State's motion in part and consolidated the trial of the *1270 State's claims against AstraZeneca with the trials of the State's claims against GSK and Novartis. The trial court set the newly consolidated trial for February 11, 2008. State's brief at Exhibit C. The trial court denied the State's consolidation motion as to the remaining 12 pharmaceutical companies the State had sought to join in a single trial.
AstraZeneca, GSK, and Novartis (collectively "the pharmaceutical manufacturers") each petitioned this Court for the writ of mandamus directing the trial court to vacate its order consolidating the cases. Although the pharmaceutical manufacturers individually petitioned this Court for the writ of mandamus, we have consolidated the petitions for the purpose of writing one opinion. The pharmaceutical manufacturers also moved this Court for a stay of the trial court's order pending this Court's review of their petitions. On January 18, 2008, this Court ordered that "the Montgomery Circuit Court's ... order of consolidation[] is stayed pending the disposition of these petitions."
While this action has been pending, the State proceeded to trial against AstraZeneca.[3] The jury returned a verdict against AstraZeneca and a judgment was entered on that verdict. However, it appears that the trial court is awaiting a decision from this Court on Novartis's and GSK's petitions before proceeding with the consolidated trial those two defendants.

Standard of Review
"`"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'"
Novartis I, 975 So.2d at 299 (quoting Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003), quoting in turn Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). "`"In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case [where the trial court exceeds its discretion]."'" Ex parte Monsanto Co., 794 So.2d 350, 351-52 (Ala.2001) (quoting Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala.1989), quoting in turn Ex parte Edgar, 543 So.2d 682, 685 (Ala. 1989)).

Issues
The pharmaceutical manufacturers first argue that they are entitled to the writ of mandamus because the trial court's order articulates no principled basis for consolidation of the cases for trial and, thus, they argue, the trial court exceeded its discretion in consolidating the cases. They further argue that the trial court exceeded its discretion when it consolidated these cases for trial because, the pharmaceutical manufacturers argue, these cases involve no common question of law or fact. Finally, the pharmaceutical manufacturers argue that the trial court exceeded its discretion because, they argue, a consolidated trial would not promote judicial economy, would confuse the jury, and would prejudice each defendant.

*1271 Analysis

I. Mootness

"A case is moot when there is no real controversy and it seeks to determine an abstract question which does not rest on existing facts or rights." State ex rel. Eagerton v. Corwin, 359 So.2d 767, 769 (Ala.1977).
"`The general rule is, if[,] pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal may be dismissed.... The condition may ... arise from the act of the court a quo, that is to say, from some order or judgment in the case pending the appeal, which is made by the court, which renders the determination of the questions presented by the appeal unnecessary.'"
Siegelman v. Alabama Ass'n of Sch. Bds., 819 So.2d 568, 575 (Ala.2001) (quoting Caldwell v. Loveless, 17 Ala.App. 381, 382, 85 So. 307, 307-08 (1920) (emphasis omitted)); see also Eagerton, 359 So.2d at 769 ("[W]hen an event occurs which renders a case moot prior to this court considering the appeal it will be dismissed because a decision is not necessary." (citations omitted)). This same principle holds with regard to petitions for the writ of mandamus. See, e.g., Ex parte St. John, 805 So.2d 684, 686 (Ala.2001) ("To the extent that the petitioner seeks relief requiring the trial judge to grant the petitioner's motion to proceed in forma pauperis in the trial court ... the petition for writ of mandamus is moot, ... because the trial judge has by now granted the motion.").
AstraZeneca sought mandamus relief from the trial court's order consolidating the AstraZeneca trial with the GSK and Novartis trials; however, AstraZeneca no longer faces the prospect of a consolidated trial with GSK and Novartis. After this Court stayed the consolidation order, the trial court proceeded in February 2008 with a trial of the State's claims against AstraZeneca alone, without consolidating that trial with the trials of GSK and Novartis and without awaiting this Court's resolution of these petitions for the writ of mandamus. State's Response to Novartis's Filing of Scheduling Order at 1. Therefore, there is no longer a controversy as to whether AstraZeneca may be required to go to trial with GSK and Novartis. Thus, AstraZeneca's petition is moot.
GSK's and Novartis's petitions, on the other hand, are not moot. The State's cases against GSK and Novartis remain consolidated for the purposes of trial. Although GSK and Novartis no longer face the prospect of going to trial with AstraZeneca, the consolidation order has not been vacated, and GSK and Novartis still face the prospect of a consolidated trial of the State's claims against them.[4] Thus, the relief they seek is not moot. Cf. St. John, *1272 805 So.2d at 686-87; Ex parte Birmingham News Co., 624 So.2d 1117, 1123 (Ala. Crim.App.1993) (holding that, where ongoing proceedings in the trial court had the effect of only partially granting relief sought by petitioner, the petition was not moot).

II. The Consolidation Order

The pharmaceutical manufacturers[5] argue that Ex parte Duncan Construction Co., 460 So.2d 852 (Ala.1984), mandates reversal of a trial court's consolidation or severance order whenever the trial court fails to set forth particular facts or findings in support of its conclusion that consolidation or severance would not result in juror confusion and prejudice. GSK's petition at 4. The pharmaceutical manufacturers further argue that the trial court in this case violated the mandate of Duncan by failing to set forth particular facts or findings as to the potential for juror confusion and prejudice caused by consolidating the cases for trial. We disagree.
Duncan involved a petition for the writ of mandamus seeking to set aside a trial court's order under Rule 14, Ala. R. Civ. P., severing a third-party claim from a consolidated action. Duncan, 460 So.2d at 854. Even if Duncan serves as authority in cases involving consolidation under Rule 42, Ala. R. Civ. P., Duncan does not stand for the proposition that this Court will reverse a trial court's order consolidating cases for trial under Rule 42(a) if the trial court's order does not set forth detailed facts in support of its conclusions regarding juror confusion and prejudice. In Duncan, this Court stated:
"While the order states that the court `finds that the case will be unduly complicated and very difficult for the jury to comprehend' if the third-party claims are allowed, nowhere does the court set out particular facts or findings in support of its conclusion, nor does the record support such a conclusion....
"....
"We find no factual or legal grounds supporting the trial court's conclusions. We are constrained, therefore, to hold that the court's severance of all third-party claims was done in an arbitrary manner and amounts to an abuse of that court's discretion."
Duncan, 460 So.2d at 854 (emphasis added).
Thus, in Duncan, the trial court did not state grounds or findings regarding the potential for juror confusion, and this Court considered whether there was support for the trial court's conclusion. After reviewing the materials before it, this Court set aside the trial court's severance order, not because the order failed to set forth particular facts or findings, but because this Court determined that the order lacked an actual basis in law and fact. This conclusion is supported by Ex parte R.B. Ethridge & Associates, Inc., 494 So.2d 54, 58 (Ala.1986), in which this Court described its reasoning in Duncan as follows: "After careful review, it seems to us that the Court in Duncan was able to determine from the record no support whatsoever in favor of the trial judge's severance order."[6]
*1273 The pharmaceutical manufacturers also argue that the trial court failed to satisfy the guidelines set forth in Justice Lyons's special concurrence in Novartis I and that in not doing so the trial court exceeded its discretion. In Novartis I, Justice Lyons cautioned the trial court that, if it considered consolidation under Rule 42, Ala. R. Civ. P., it should not do so in the manner it had previously done so, when it placed the defendants into "procrustean bed[s]" of trial groups determined by undisclosed reports of special masters, without revealing the rationale behind the groupings and without any principled basis apparent in the trial court's order or in the record. Justice Lyons warned that, if the trial court used the same approach to consolidation under Rule 42(b), then the State's burden would be "greatly increased" should the defendants seek a writ of mandamus. Novartis I, 975 So.2d at 305.
In its order, the trial court states:
"A review of the pleadings filed in these actions reveals that the State's allegations against each [pharmaceutical manufacturer] present identical claims and legal theories of recovery. Specifically, the State' s second amended complaint asserts the same claims of fraudulent misrepresentation, fraudulent suppression, wantonness, and unjust enrichment against each defendant. In addition, based upon the expert disclosures filed by the State and attached as an exhibit to its motion to consolidate, it appears that the expert testimony which the State anticipates to present at trial will be the same for all defendants, as will the State's model and methodology for proving its alleged damages.
". . . .
"Similarly, the answers of the [pharmaceutical manufacturers] to the State's second amended complaint reflect that these defendants have asserted eighteen common factual and legal affirmative defenses to the State's claims, including the following: statute of limitations; repose, laches, estoppel, and waiver; standing; failure to satisfy federal regulatory requirements; federal preemption; political question doctrine; and filed rate doctrine. Given the commonality of the claims and defenses presented in these actions, the Court concludes that separate trials against each of the [pharmaceutical manufacturers] would be largely duplicative and inefficient.
". . . .
"Another significant fact common to all defendants is that each of them participates in the State of Alabama's Medicaid program. Consequently, it is anticipated that, the State's case against all defendants  regardless of the number of trials  will necessarily address facts common to all defendants including the operations of the Alabama Medicaid Agency, the structure of the Alabama Medicaid Agency's reimbursement system, and the defendants' participation in and practices and procedures concerning the reimbursement program. Additionally, there are the common facts that each defendant reported its prices for the drugs at issue to certain price reporting services, namely First DataBank (`Blue Book') and Medical Economics, Inc. (`Red Book') and that the Alabama Medicaid Agency allegedly relied on these reported prices to reimburse providers. As such, evidence demonstrating facts common to all defendants will *1274 be presented at these trials including evidence as to how the price reporting services operate and the interaction between the Alabama Medicaid Agency and the price reporting services by which the defendants' reported prices are obtained and utilized.
"Based upon these common questions of fact, it is anticipated that the State will present the same evidence and testimony at each defendant's trial. As previously referenced, the expert disclosures submitted by the State reflect that the State expects to present the same expert testimony from the same expert witnesses to establish liability and to calculate damages at each trial."
State's brief at Exhibit C.
The parties briefed the issues; the trial court considered the parties' arguments; and the trial court issued an order setting forth its reasoning for ordering a consolidated trial of the State's claims against AstraZeneca, GSK, and Novartis. Moreover, the trial court's order is sufficient for us to review whether the decision to consolidate these cases is supported by a principled basis in law and fact.
The trial court's consolidated order is not due to be reversed on the basis that the findings therein are insufficient; thus, the pharmaceutical manufacturers have not demonstrated that they have a clear legal right to the order sought or that the trial court had an imperative duty to perform and refused to do so. Therefore, they are not entitled to the writ of mandamus on this issue.

III. Consolidation Under Rule 42(a)

The pharmaceutical manufacturers argue that the trial court erred when it consolidated these actions trial under Rule 42(a), Ala. R. Civ. P., because, they argue, the actions consolidated involve no common question of law or fact. Alternatively, the pharmaceutical manufacturers argue that the trial court erred when it consolidated these actions because, they argue, a consolidated trial would not promote judicial economy, would confuse the jury, and would prejudice each defendant. We address each argument in turn.

A. Common question of law or fact

The pharmaceutical manufacturers argue that consolidation of these cases for trial under Rule 42(a), Ala. R. Civ. P., was inappropriate because, they say, there is no common question of law or fact. Novartis's petition at 11. They also argue that this case "share[s] none of the characteristics with those in which this Court has[, in the past,] endorsed consolidation." GSK's petition at 6.
Rule 42(a), Ala. R. Civ. P., provides:
"When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."
"We have said that `[c]ircuit judges have broad powers under the Alabama Rules of Civil Procedure ... to order actions consolidated.'" Ex parte Flexible Prods. Co., 915 So.2d at 39 (quoting State v. Reynolds, 887 So.2d 848, 854 (Ala.2004)). "[Rule 42(a) ] specifically recognizes the propriety of consolidation, as well as the trial court's discretion to order consolidation as necessary to reduce costs or delay." Owens-Corning Fiberglass Corp. v. James, 646 So.2d 669, 674 (Ala.1994).
As noted, the trial court's consolidation order states:

*1275 "A review of the pleadings filed in these actions reveals that the State's allegations against each Consolidated Defendant present identical claims and legal theories of recovery. Specifically, the State's second amended complaint asserts the same claims of fraudulent misrepresentation, fraudulent suppression, wantonness, and unjust enrichment against each defendant. In addition, based upon the expert disclosures filed by the State and attached as an exhibit to its motion to consolidate, it appears that the expert testimony which the State anticipates to present at trial will be the same for all defendants, as will the State's model and methodology for proving its alleged damages."
State's brief at Exhibit C. The pharmaceutical manufacturers argue that "[t]he trial court's reliance on allegations in the pleadings was misplaced.... Any `common' issues are common only inasmuch as they can be described using the same words."[7] Novartis's petition at 11.
As the trial court notes, the State has alleged "the same claims of fraudulent misrepresentation, fraudulent suppression, wantonness, and unjust enrichment against each defendant." "[T]he mere fact that two cases assert similar [or the same] theories of recovery does not constitute a common question of law so as to warrant consolidation," Flintkote Co. v. Allis-Chalmers Corp. 73 F.R.D. 463, 466 (D.C.N.Y. 1977) (footnote omitted). However, our review of the pleadings reveals that certain elements of the State's first two claims present common questions of law and fact.

i. Fraudulent misrepresentation

"To establish the elements of fraudulent misrepresentation [the State] ha[s] to show: `(1) that the [pharmaceutical manufacturers'] representation was false, (2) that it concerned a material fact, (3) that [the State] relied on the false representation, and (4) that actual injury resulted from that reliance.'" Consolidated Constr. Co. of Alabama v. Metal Bldg. Components, L.P., 961 So.2d 820, 825 (Ala. 2007) (Bolin, J., concurring specially) (quoting Boswell v. Liberty Nat'l Life Ins. Co., 643 So.2d 580, 581 (Ala.1994)).
The factual basis of the State's fraudulent-misrepresentation claim against the pharmaceutical manufacturers is that they "reported or caused to be reported AWP [average wholesale price], WAC [wholesale acquisition cost], and Direct Price for their products ... for publication and dissemination to state Medicaid agencies such as Alabama Medicaid." State's second amended complaint, Appendix, Vol. 1 at Exhibit 1, at 38. The State asserts that "Alabama Medicaid reasonably relied on the false pricing data in setting prescription drug reimbursement rates and making payment on such rates." State's second amended complaint, Appendix, Vol. 1 at Exhibit 1, at 38. Thus, it appears that in this case there will be a common question of fact as to whether the pricing information published in the third-party publications was material and whether the State, in fact, relied on that information. Although the other elements of the State's claim may "produce proof pertaining to individual actors and actions," Novartis's petition at 11, whether the prices submitted to and published in the third-party publications were material and whether the State relied on the third-party publications in calculating the amounts to reimburse the providers appear to be questions common to both GSK and Novartis.

*1276 ii. Fraudulent suppression

"The elements of a fraudulent-suppression claim are `"(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury."'" McIver v. Bondy's Ford, Inc., 963 So.2d 136, 143 (Ala.Civ.App.2007) (quoting Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C., 932 So.2d 883, 891 (Ala.2005), quoting in turn Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996)). The State specifically alleges that the pharmaceutical manufacturers "voluntarily undertook to report or cause to be reported AWP, WAC, and Direct Price for their products ... for publication and dissemination to state Medicaid agencies including Alabama Medicaid" and that they "had a duty under the particular circumstances to provide accurate and complete AWP, WAC, and Direct Price information." State's second amended complaint, Appendix, Vol. 1 at Exhibit 1, at 39. In its answer, GSK admits that it "distributes, markets or sells certain prescription drugs that are reimbursed by Alabama Medicaid" and that "from time to time, GSK provided price communications to third party publications which contained `WACs' [wholesale acquisition costs] or similar list prices for wholesalers for certain of its drugs." GSK's answer, Appendix, Vol. 1 at Exhibit 4, pp. 7 and 19. Similarly, Novartis admits that "it distributes, markets or sells ... prescription drugs that are reimbursed by Alabama Medicaid" and that "from time to time during the relevant period, Novartis provided price lists to third party publications which contained, inter alia, `AWPs' [average wholesale prices] and `WACs' [wholesale acquisition costs] for certain of its drugs...." Novartis's answer, Appendix, Vol. 1 at Exhibit 3, pp. 6 and 12.
"[T]he existence of a duty is a question of law to be determined by the trial judge." State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 839 (Ala.1998). Thus, it appears that there is a common question of law as to whether the pharmaceutical manufacturers, in participating in Alabama's Medicaid program and reporting prescription drug prices to the third-party reporting services, had a duty to accurately disclose their prescription drug prices to the third-party publications.
Similarly, it appears that common to both actions on this claim is the question whether the State, in fact, acted to its injury with regard to the information provided to the third-party publications.
The pharmaceutical manufacturers argue that this case "share[s] none of the characteristics with those in which this Court has[, in the past,] endorsed consolidation." GSK's petition at 6. They argue that this Court has endorsed consolidation "in cases involving a single, identifiable product or event," such as toxic-tort cases or cases arising out of the same transaction and in cases involving "conspiracies and concurrent torts" or that this Court has limited consolidation of trials to "common issues" rather than consolidating as to "all issues." GSK's petition at 6.[8] Nonetheless, *1277 Rule 42(a) permits joint trials when the cases share "a common question of law or fact." Ala. R. Civ. P. 42(a). One of either  law or fact  will suffice as the basis for invoking the rule. See also 33 Fed. Proc., L.Ed. § 77:44 (1995) ("Actions involving the same parties are likely candidates for consolidation, but a common question of law or fact is enough; if a common question exists, courts often consolidate actions despite differences in parties."); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2382 (3d ed. 2008) ("The existence of a common question by itself is enough to permit consolidation under Rule 42(a), [Fed.R.Civ.P.,], even if the claims arise out of independent transactions."). Further, consolidation under Rule 42 does not require that common issues predominate over other issues. See Ex parte Flexible Prods. Co., 915 So.2d at 42 ("Moreover, we reject the argument presented by the defendants that the propriety of the [case-management order] rests upon a determination of whether any common issues `predominate' over the other issues in the actions to be consolidated. A weighing of the relative dominance of the particular issues presented by actions to be consolidated (an exercise that would be speculative in actions such as this where the common issues have yet to be framed) is not required by Rule 42."). Therefore, the trial court did not err when it found that the existence of a common question of law or fact in these cases forms the premise for consolidating them.

B. Prejudice, confusion, and judicial economy

The pharmaceutical manufacturers argue, alternatively, that even if these cases present a common question of law or fact, consolidation is inappropriate because, they say, the consolidation will prejudice the parties, confuse the jury, and will waste judicial resources.
"[T]he fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote `trial convenience and economy in administration.'" Prudential Ins. Co. of America v. Marine Nat'l Exch. Bank, 55 F.R.D. 436, 437 (E.D.Wis.1972) (quoting Schacht v. Javits, 53 F.R.D. 321, 324-25 (S.D.N.Y.1971)).
"`In determining whether various claims are appropriate for consolidation, "the dominant consideration in every case is whether the trial will be fair and impartial to all parties." Consolidation should be avoided if it would cause "`confusion or prejudice as to render the jury incapable of finding the facts on the basis of the evidence.'" If an injustice will result from consolidated trials, a *1278 trial court "has no discretion to deny separate trials."'"
Ex parte Flexible Prods. Co., 915 So.2d at 43 (quoting In re Van Waters & Rogers, Inc., 145 S.W.3d 203, 208 (Tex.2004) (footnotes omitted)). See also Fox v. Hollar Co., 576 So.2d 223, 225 (Ala.1991) ("[T]he right of a party to litigate all claims in one proceeding is secondary to the overriding goal of preventing prejudice to the parties."); Bateh v. Brown, 293 Ala. 704, 711, 310 So.2d 186, 192 (1975) ("[C]onsolidation should not be allowed where it may result in prejudice to one or more of the parties.").
The United States Court of Appeals for the Eleventh Circuit has noted that a trial court in exercising its discretion to consolidate actions under Rule 42(a), Fed.R.Civ. P., should determine:
"`[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.'"
Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir.1985) (quoting Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir.1982)). The Eleventh Circuit Court of Appeals in Hendrix also noted that trial courts
"must also bear in mind the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation."
Hendrix, 776 F.2d at 1495.
In its order, the trial court concludes its decision to consolidate these cases by stating:
"The Court further finds that consolidation of these actions promotes effective case management and avoids needlessly duplicative trials. Consolidation of these actions will conserve judicial resources, alleviate unnecessary delay and expense, reduce the burden on witnesses and the parties, and result in the most efficient and economical disposition of these actions. Moreover, the Court finds that the parties will not suffer prejudice as a result of consolidation of the trials of the Consolidated Defendants as these defendants are members of the `Track 1' grouping of cases for trial, originally set for trial in November 2007, and for which the discovery deadline has expired. Finally, the logical grouping of the Consolidated Defendantsall of which manufacture, market and sell brand-name drugs and similarly report pricesminimizes the risk of any prejudice or confusion which could potentially result from consolidation."
State's petition at Exhibit 3. The pharmaceutical manufacturers argue that the trial court exceeded its discretion in ordering a joint trial because "a joint trial of claims against [two] individual manufacturers, each of which, over a 15 year period, sold hundreds of different products that were priced, marketed, and reimbursed in different ways will numb jurors to key distinctions among the defendants, their products, and their marketing practices." Novartis's petition at 18. Specifically, the pharmaceutical manufacturers argue that their cases involve hundreds of drugs and that the State's claims necessitate demonstrating proof regarding intent, falsity, and *1279 reliance as to each defendant that will create an inordinately complex evidentiary record. They further argue that "paralyzed by confusion, jurors will, by default, treat all of the disparate evidence as if it were relevant to all of the defendants. The inevitable prejudice will be substantial." Novartis's petition at 18.
In support of their argument, the pharmaceutical manufacturers point to statements made by Judge Patti B. Sardis, the Boston-based federal district judge handling the multidistrict aspects of the AWP litigation. The pharmaceutical manufacturers note that Judge Sardis's experience "led her to conclude that the evidentiary records in [AWP litigation] are simply too complex and confusing for multi-defendant jury trials." Novartis's petition at 14. Similarly, the pharmaceutical manufacturers point to statements of Circuit Court Judge Richard G. Niess of the Dance County, Wisconsin, who noted:
"[I]t is not at all apparent ... that any defendant could have its case fairly considered by the jury if not in a separate trial. Defendants present a compelling argument for insurmountable jury confusion with their proof on differing corporate practices among the defendants, multiple claims against each defendant each consisting of multiple elements and each portending multiple verdict questions both on these claims and defendants' affirmative defenses."
Novartis's petition at 17. Finally, the pharmaceutical manufacturers note that "`[t]he very purpose of consolidation is to expedite litigation and save money.'" Novartis's petition at 26 (quoting Teague v. Motes, 57 Ala.App. 609, 613, 330 So.2d 434, 439 (Ala.Civ.App.1976)). However, they argue that a consolidated trial does not promote judicial economy because, the pharmaceutical manufacturers say, consolidation will require the trial court and the defense attorneys to spend an inordinate amount of time keeping separate the claims and evidence attributable to the respective defendants and claims. Novartis's petition at 27. The pharmaceutical manufacturers further argue that "separate trials also minimize the threat of long-term inefficiencies in the form of appellate reversals and retrials." Novartis's petition at 28.
The State, on the other hand, argues that the pharmaceutical manufacturers' argument that the consolidation will result in jury confusion and prejudice is speculative. State's brief at 19. The State further argues that any possible confusion or prejudice "could be avoided or minimized through careful management of the trial  through evidentiary rulings, jury instructions, motions in limine, [and] special verdict forms," State's brief at 20, and that the trial court is allowed "to shape the order of trial through the provisions of Rule 42(a), Ala. R. Civ. P." State's brief at 23 (citing Ex parte Monsanto Co., 794 So.2d at 357). Finally, the State argues that Judge Sardis's comments are inapposite to this case because the cases before her involved multidistrict class-action claims involving more than one plaintiff and differing theories of recovery. State's brief at 24.
In Quintel Corp., N.V. v. Citibank, N.A., 100 F.R.D. 695, 697 (D.C.N.Y. 1983), the federal district court in New York recognized:
"This type of danger [jury confusion] exists, of course, in many multidefendant, multicount trials. It is a tenet of the jury system that jurors follow the court's instructions and can apply different standards to several defendants. There is nothing extraordinary about these cases, such as inevitably conflicting findings, that would make the danger of confusion paramount."
*1280 As the Eleventh Circuit Court of Appeals noted in Hendrix, the Court must keep in mind "the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation." Hendrix, 776 F.2d at 1495.
Although this Court recognizes that the facts and evidentiary record in these cases may be complex, we cannot conclude that the trial court exceeded its discretion when it consolidated these cases for trial. With the trial of AstraZeneca already having concluded, the remaining consolidated action has only two defendants, Novartis and GSK, and the State has asserted only four claims against each defendant. Under these circumstances, we agree with the State that any prejudice and/or confusion can be avoided or minimized by careful trial management.
"For the writ of mandamus to issue `"[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief. The writ will not issue where the right in question is doubtful."'" Ex parte Vance, 900 So.2d 394, 398-99 (Ala.2004) (quoting Goolsby v. Green, 431 So.2d 955, 958 (Ala.1983), quoting in turn Ex parte Dorsey Trailers, Inc., 397 So.2d 98, 102 (Ala.1981)). "`This Court does not issue the writ of mandamus based on mere speculation as to the possible occurrence of future events.'" Ex parte Flexible Prods. Co., 915 So.2d at 41 (quoting Ex parte Vance, 900 So.2d at 398-99.). In order to issue the writ of mandamus in this case, we have to conclude that Judge Price has exceeded his discretion; we do not so conclude.

Conclusion
For the foregoing reasons, we deny GSK's and Novartis's petitions for the writ of mandamus and dismiss as moot Astrazeneca's petition for the writ of mandamus.
1070310  PETITION DENIED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., dissents.
1070311  PETITION DENIED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., dissents.
1070312  PETITION DISMISSED AS MOOT.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
MURDOCK, Justice (concurring in case no. 1070312 and dissenting in cases no. 1070310 and no. 1070311).
I agree that the petition for the writ of mandamus filed by AstraZeneca is due to be dismissed as moot because the trial in that case has already occurred. As to the petitions filed by Novartis and GSK, however, because of the factual complexity of the claims and defenses of the parties and the likelihood of substantial confusion on the part of the jury and of prejudice to the defendants as a result of the consolidation, I respectfully dissent.
NOTES
[1] Rule 20(a), Ala. R. Civ. P., provides:

"(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."
[2] Rule 42(a), Ala. R. Civ. P., provides:

"(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."
[3] AstraZeneca made clear to the trial court that it was not opposing the order scheduling a joint trial of AstraZeneca LP and AstraZeneca Pharmaceuticals LP but that it did oppose a joint trial with additional defendants GSK and Novartis and that AstraZeneca was willing to go to trial on February 11 without those additional defendants.
[4] On March 6, 2008, the trial court issued an order stating that if this Court did not rule on the GSK and Novartis petitions by Friday, March 21, 2008, the Montgomery Circuit Court would proceed with separate trials. Specifically, the order indicated that State of Alabama v. Novartis Pharmaceuticals Corp. would be set for trial beginning on April 7, 2008, and State of Alabama v. SmithKline Beecham Corp. would be set for trial beginning on May 12, 2008. On March 21, 2006, this Court issued a "Notice to Parties"; that notice provided:

"This Court will not issue a decision in the above-referenced mandamus petitions on March 21, 2008, but anticipates a decision will be issued on or before April 18, 2008. This information is provided to the parties in order to afford the plaintiff, the State of Alabama, if it so desires, the opportunity to apply to the trial court for a continuance of the trial of State of Alabama v. Novartis Pharmaceuticals Corp., scheduled for April 7, 2008."
In apparent response to this Court's notice, the trial court has continued the trial in State of Alabama v. Novartis Pharmaceuticals Corp.
[5] Because the petition of each pharmaceutical manufacturer joins and adopts the petitions of the other pharmaceutical manufacturers, we continue to use the term "pharmaceutical manufacturers" in the remainder of the opinion, even though we have determined that AstraZeneca's petition is moot.
[6] The pharmaceutical manufacturers also argue that "[t]he order virtually ignores the paramount considerations of confusion and prejudice." Novartis brief at 8. It may be true that Alabama caselaw recognizes that "the right of a party to litigate all claims in one proceeding is secondary to the overriding goal of preventing prejudice to the parties," Fox v. Hollar Co., 576 So.2d 223, 225 (Ala. 1991); however, neither this caselaw nor Duncan requires the trial court to detail those findings in its order.
[7] Rule 42(a) directs us to ask whether there is a common question of law or fact, not whether the consolidated actions are similar or whether there are common "issues."
[8] The pharmaceutical manufacturers also argue that consolidation of these cases is inappropriate given this Court's adoption, in Ex parte Flexible Products, supra, of In re Van Waters & Rogers, Inc., 145 S.W.3d 203 (Tex. 2004). In Van Waters, the Supreme Court of Texas noted that "`[a] further consideration [in determining whether to consolidate cases] is the maturity of the alleged tort. In In re Bristol-Myers Squibb, [975 S.W.2d 601 (Tex. 1998),] we instructed lower courts to "proceed with extreme caution" when consolidating claims of immature torts. A tort is mature only when "`there has been full and complete discovery, multiple jury verdicts, and a persistent vitality in the plaintiffs' [contentions].'"'" Ex parte Flexible Prods. Co., 915 So.2d at 45 (quoting Van Waters 145 S.W.3d at 208)(additional citations omitted). The pharmaceutical manufacturers argue that this litigation "is a novel claim in Alabama; it has not been the subject of `multiple jury verdicts' or shown any `persistent vitality,' nor has a case involving it ever been `tried or appealed' in this State." GSK's petition at 13. Thus, the pharmaceutical manufacturers argue, these cases are not "mature" enough for consolidation. However, the pharmaceutical manufacturers's reliance on Van Waters is misplaced. Van Waters, and the authority on which it is premised, is designed "[t]o aid in the determination of whether consolidation is appropriate in a mass tort case alleging exposure in a workplace." Van Waters 145 S.W.3d at 207. Even if the Van Waters consideration is applicable, this case will not be the first AWP case the trial court conducts  as noted above, the State's case against AstraZeneca has already gone to trial. Moreover the State's claims  fraudulent misrepresentation, fraudulent suppression, wantonness, and unjust enrichment  are not novel.