975 So.2d 297 (2007)
Ex parte NOVARTIS PHARMACEUTICALS CORPORATION.
In re State of Alabama
v.
Abbott Laboratories, Inc., et al.).
No. 1060224.
Supreme Court of Alabama.
June 1, 2007.
*298 William D. Coleman and James N. Walter, Jr., of Capell & Howard, P.C., Montgomery; and Jane W. Parver, Saul P. Morgenstern, Mark Godler, and Samuel Lonergan of Kaye Scholer, LLP, New York, New York, for petitioner.
Troy King, atty. gen.; Roger L. Bates of Hand Arendall, L.L.C., Birmingham; Caine O'Rear III and Windy C. Bitzer of Hand Arendall, L.L.C., Mobile; and W. Daniel Miles III and Clinton C. Carter of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for respondent.
PER CURIAM.
Novartis Pharmaceuticals Corporation, one of the defendants in an action filed by the State of Alabama against 73 pharmaceutical companies, has filed a petition for a writ of mandamus requesting that this Court direct the trial court to vacate its order denying Novartis's motion to sever the claims against it from the claims asserted against other companies and to enter an order severing those claims. We grant the petition and issue the writ.

I. Factual Background and Procedural History

The State sued 73 pharmaceutical companies, including Novartis, alleging that those companies "engaged in false, misleading, wanton, unfair, and deceptive acts and practices in the pricing and marketing of their prescription drug products" and that the Alabama Medicaid Agency ("the Agency") relied on that pricing in reimbursing Alabama physicians and pharmacies ("the providers") for prescription-drug costs for approximately 1,300 drugs. The State alleged fraudulent misrepresentation, fraudulent suppression, wantonness, and unjust enrichment. According to the State, each company independently caused the Agency to pay the providers more for dispensing that company's drugs to Medicaid patients than the providers paid for the drugs, allowing the providers to profit on their sale. The companies did not receive any of the alleged overpayments; rather, according to the State, each company reported false pricing benchmarks and failed to disclose to the Agency discounts or rebates that had been made available to the providers. The State claimed that each company then marketed this profit margin to the providers to encourage them to use that company's products rather than those of its competitors.
Many of the companies filed motions to sever and/or for separate trials. The trial court summarily denied those motions, stating in its order "that there are questions of law and facts common to all the parties and that the transactions and occurrences in question all dealt with the Alabama Medicaid Agency." Novartis and 43 other companies then filed petitions for a writ of mandamus with this Court, asking us to direct the trial court to vacate its order denying the motions and to enter an order severing all claims against each petitioning company from the claims asserted against other companies or to order a separate trial for each petitioning company. The Court ordered the State to file an answer and brief and ordered counsel for Novartis to file a response on behalf of the 44 companies.[1]

*299 II. Standard of Review

"`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)). "A petition for a writ of mandamus is the appropriate means for challenging a trial court's ruling on a motion to sever claims." Ex parte Alfa Life Ins. Corp., 923 So.2d 272, 273 (Ala.2005).

III. Analysis

At issue in this case is whether the State has satisfied the permissive-joinder requirements of Rule 20(a), Ala. R. Civ. P. Rule 20(a) states, in pertinent part:
"(a) Permissive Joinder. . . . All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. . . . "
In order to join defendants pursuant to Rule 20(a), both requirements imposed by the rule must be met: (1) the plaintiff must assert against each defendant a "right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there will arise in the action "any question of law or fact common to all defendants." A misjoinder occurs if either of the Rule 20(a) requirements is not satisfied. Rule 21, Ala. R. Civ. P., provides for severance of claims if joinder of the claim was improper under Rule 20.
The State contends that many common issues of law and fact support its joinder of the various pharmaceutical companies in this case, and it correctly argues that Rule 20(a) does not require that every question of law and fact be common, only that there exist any common question of law or fact. Even if we were to assume that the State has satisfied the second requirement for joinder under Rule 20(a), a more difficult question is presented by the first requirement: whether the State's alleged right to relief arises from the same transaction or occurrence, or series of transactions or occurrences. Novartis argues that the State's claims against the different pharmaceutical companies do not arise out of the same transaction or series of transactions. The State's complaint alleges that over approximately 15 years each company acted individually and independently of any other company and at various times and in various ways. The State disavows any theory of conspiracy. Novartis maintains that permissive joinder requires that the claims arise from the same transaction or series of transactions, not merely similar types of independent transactions.
Novartis relies on Ex parte Alfa Life Insurance Corp., supra, a case involving the misjoinder of plaintiffs, not defendants as is the case here. In Ex parte Alfa, this Court held that severance of fraud claims asserted by several plaintiffs against an insurance company was required under the circumstances of that case. We also concluded that even though the alleged fraudulent representations were made by a single defendant, the individual claims of each *300 plaintiff against that defendant could not be joined in one action. 923 So.2d at 274-75. In this case, where the State alleges that it was misled by each of numerous companies, Novartis argues that joinder cannot be proper.
The State insists that its claims against the companies arise out of the same series of transactions or occurrences and points out that Rule 20 encourages the joinder of claims, parties, and remedies. The State cites Ex parte Turpin Vise Insurance Agency, Inc., 705 So.2d 368, 370 (Ala.1997), in which this Court quoted the Committee Comments on 1973 Adoption of Rule 20 for the proposition that that rule "`is intended to promote trial convenience, prevent a multiplicity of suits, and expedite the final determination of litigation by inclusion in one suit of all parties directly interested in the controversy'"; the State maintains that the companies' alleged reporting of false prices to national reporting agencies occurred as a result of precisely the same type of transaction or occurrence by each company.
This Court has previously stated that "there is no absolute rule for determining what constitutes `a series of transactions or occurrences' [under Rule 20]. Generally, that is determined on a case by case basis and is left to the discretion of the trial judge." Ex parte Rudolph, 515 So.2d 704, 706 (Ala.1987). In addition to the Alabama cases the parties rely on, both parties have cited federal cases that examine what constitutes "a series of transactions or occurrences."[2] Federal courts have also adopted a case-by-case approach in determining whether a case meets the "same transaction or occurrence" requirement of Rule 20(a). See 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653 (3d ed.1998).
In the cases on which Novartis relies, federal courts have applied Rule 20(a), Fed.R.Civ.P., which is identical to Alabama's Rule 20(a) in all relevant respects, to hold that joinder was improper in situations such as the one presented here  where one plaintiff sues multiple defendants for economic loss, alleging independent, yet coincidentally similar, acts based on the same legal theory. In these cases, a common theme emerges of lack of any conspiracy allegations coupled with different entities engaging in coincidentally similar yet separate transactions.[3] See, e.g., Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co., 497 F.2d 1151, 1154 (2d Cir.1974) (holding in case where associations of insurance agents sued 164 insurance companies that joinder of the defendants was improper because the transactions between the companies and the agents were different and there were no allegations of conspiracy or other concerted action); DIRECTV v. Loussaert, 218 F.R.D. 639, 642-43 (S.D.Iowa 2003) (joinder of individual purchasers of pirate-access devices was improper in the absence of a common purpose among the defendants); Wynn v. National Broad. *301 Co., 234 F.Supp.2d 1067, 1078 (C.D.Cal. 2002) (mere assertion that the 51 defendants were members of a common industry was not enough to permit joinder of defendants); Androphy v. Smith & Nephew, Inc., 31 F.Supp.2d 620, 623 (N.D.Ill.1998) (in patent-infringement action, claims against different companies with different products in competition with each other had been improperly joined); Rappoport v. Steven Spielberg, Inc., 16 F.Supp.2d 481, 496 (D.N.J.1998) (joinder was improper where each defendant allegedly used plaintiff's work separately and differently); Tele-Media Co. of W. Connecticut v. Antidormi, 179 F.R.D. 75, 76 (D.Conn.1998) (cable-television provider sued 104 defendants alleging that they had used an illegal converter; in absence of any claim of conspiracy or joint action, same-transaction requirement was not satisfied); Magnavox Co. v. APF Elecs., Inc., 496 F.Supp. 29, 34 (N.D.Ill.1980) (joinder improper where defendants alleged to have infringed same patent sold different products). Novartis contends that these cases demonstrate that the trial court erred in concluding that the permissive-joinder requirements of Rule 20 were met here merely because the transactions in question all dealt with the Agency. Novartis insists that the fact that numerous separate transactions or occurrences all took place with one entity, whether an insurance company as was the case in Ex parte Alfa or a State agency as here, does not satisfy the requirement of Rule 20 that the claims arise out of the same transaction or series of transactions.
Conversely, the State argues that although the actual pricing representations made by the pharmaceutical companies necessarily vary because multiple drugs are involved, all of the companies allegedly reported inflated prices to the national reporting services, upon which the Agency relied in reimbursing the providers, and the Agency's reliance did not vary by company. The State argues that Novartis has not demonstrated that the trial court exceeded its discretion in denying its motion for severance. The cases relied on by the State all involve allegations that the various parties joined in the action were linked together in some way. See, e.g., Moore v. Comfed Sav. Bank, 908 F.2d 834, 839 (11th Cir.1990) (plaintiffs alleged that the defendants took part in a similar scheme that was maintained either by conspiracy or contract; joinder was proper where connections between parties arose out of a series of transactions initiated by defendant Land Bank); City of New York v. Joseph L. Balkan, Inc., 656 F.Supp. 536, 549 (E.D.N.Y.1987) (City alleged systemic corruption of City's sewer inspectors and various contractors in violation of Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); motion to sever filed by one contractor was denied); Mack v. J.C. Penney Co., 108 F.R.D. 30, 31 (S.D.Ga.1985) (joinder of multiple plaintiffs allowed in action against J.C. Penney alleging a pervasive policy of employment discrimination in one store). See also United States v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith, 801 F.Supp. 984, 995 (E.D.N.Y.1992), citing City of New York v. Joseph L. Balkan, Inc. (joinder of numerous defendants permitted because complaint alleged that property belonging to each defendant had been forfeited to the government because of defendant's participation in illegal drugsales conspiracy).
Another case relied on heavily by the State in arguing that the trial court's denial of the motion to sever was proper is Ex parte Flexible Products Co., 915 So.2d 34 (Ala.2005), in which this Court denied as premature a petition for a writ of mandamus seeking to set aside a case-management order consolidating actions for trial. *302 Flexible Products did not arise in the context of the trial court's denial of a motion to sever improperly joined claims pursuant to Rule 20; instead, the Court in Flexible Products reviewed a trial court's consolidation of claims pursuant to Rule 42, Ala. R. Civ. P. The Court never reached the question whether the complaint complied with Rule 20 in joining multiple defendants; therefore, it does not assist the Court in deciding whether the State's claims against the companies arise out of the same transaction or series of transactions.
This Court has not only looked to the cases relied on by the parties, but has also conducted its own research on the crucial question whether the State's claims against the pharmaceutical companies arise out of the same transaction or occurrence or a series of transactions or occurrences. Although Novartis cited DIRECTV v. Loussaert, supra, in its petition, it is but one of a series of DIRECTV cases with facts strikingly similar to the facts before us. DIRECTV, Inc., a provider of television programming via satellite, filed actions in several federal courts across the country, suing, in each action, numerous individuals who allegedly obtained the television programming illegally.
Some courts faced with the joinder issue denied motions filed by the defendants to sever DIRECTV's claims against them. See, e.g., DIRECTV, Inc. v. Hosey, 289 F.Supp.2d 1259 (D.Kan.2003); DIRECTV, Inc. v. Vanryckeghem, No. Civ. A. 04-253 (E.D.La. August 10, 2004) (not reported in F.Supp.2d); DIRECTV, Inc. v. Russomanno, No. 03-2475 (D.N.J. November 12, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Essex, No. C02-5503RJB (W.D.Wash. November 13, 2002) (not reported in F.Supp.2d). In these cases, the court relied on the presence of a common vendor selling illegal decoding devices to each of the defendants. No comparable factor is present in this proceeding.
Most courts, however, found joinder by DIRECTV of multiple defendants improper and granted the defendants' motions to sever. See, e.g., DIRECTV, Inc. v. Boggess, 300 F.Supp.2d 444 (S.D.W.Va.2004); DIRECTV, Inc. v. Beecher, 296 F.Supp.2d 937 (S.D.Ind.2003); DIRECTV v. Loussaert, 218 F.R.D. at 642-43 (cited by Novartis); DIRECTV, Inc. v. Armellino, 216 F.R.D. 240 (E.D.N.Y.2003); In re DIRECTV, Inc., No. C-02-5912-JW (N.D.Cal. July 26, 2004) (not reported in F.Supp.2d); DIRECTV, Inc. v. Lewis, No. 03-CV-6241CJS(F) (W.D.N.Y. January 6, 2004) (not reported in F.Supp.2d); DIRECTV, Inc. v. Westerheide, No. 03-C3476 (N.D.Ill. February 4, 2004) (not reported in F.Supp.2d); DIRECTV, Inc. v. Davlantis, No. 03-C3506 (N.D.Ill. November 26, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Perez, No. 03-C3504 (N.D.Ill. November 12, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Geenen, No. 03-C3542 (N.D.Ill. November 10, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Gatsiolis, No. 03-C3534 (N.D.Ill. November 10, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Patel, No. 03-C3442 (N.D.Ill. November 10, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Long,, No. SA-03-CA-360-XR (W.D.Tex. October 29, 2003) (not reported in F.Supp.2d); DIRECTV, Inc. v. Smith, No. 03-C3540 (N.D.Ill. September 18, 2003) (not reported in F.Supp.2d).
We find the majority rule in these DIRECTV cases to be persuasive. We are led to this conclusion by language in Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926), in which the United States Supreme Court discussed the meaning of the word "transaction" in the context of multiple events as follows:

*303 "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. The refusal to furnish the quotations is one of the links in the chain which constitutes the transaction upon which appellant here bases its cause of action."
(Emphasis added.) As Moore teaches and the DIRECTV cases demonstrate, however, "to be reasonably related, the actions must involve more than just similar goods that are used for a similar purpose." DIRECTV, Inc. v. Boggess, 300 F.Supp.2d at 449.
In the DIRECTV cases, most courts reviewing the joinder issue reasoned that although the complaints asserted claims against the various defendants arising from similar transactions, they did not assert claims arising from the same transaction, as Rule 20(a) requires. Importantly, in the DIRECTV cases, the plaintiff did not claim that any of the defendants conspired together or acted in concert with one another. In Movie Systems, Inc. v. Abel, 99 F.R.D. 129, 130 (D.Minn.1983), the plaintiff filed 18 lawsuits with approximately 100 defendants each, alleging that each defendant had illegally pirated television programs distributed by the plaintiff. The trial court held that the defendants had been improperly joined because each complaint stated a separate cause of action against each of the defendants concerning a transaction with the plaintiff that was distinct and unrelated to any other transaction, and the complaint did not allege any type of conspiracy. Absent greater affinity, in such cases there are no links in a chain necessary to form a series.
Using the Supreme Court's analogy in Moore v. New York Cotton Exchange, we cannot say that the claims against the various pharmaceutical companies are links in the same chain. As previously noted, the State has not alleged that the companies conspired with each other or that they acted in concert. The transactions involved different companies, different products, and different time periods over 15 years. Under the circumstances of this case, we conclude that although the alleged transactions are similar, they are not the same. Put another way, the transactions in this case constitute separate chains. If we were to consider the various transactions at issue to be links in the same chain, we could expect that, taken to its logical extreme, the State could amend its complaint to join the various providers (local pharmacies, physicians, and others) as defendants on the theory that they too engaged in the same transaction or series of transactions in which the pharmaceutical companies engaged. In the absence of combined and concurring tortious conduct causing a single injury,[4] the same transaction or series of transactions requires more than just similarity or coincidence  some coordination between parties is required.
To illustrate this conclusion, consider a hypothetical plaintiff who makes multiple purchases (for example, a house, a boat, an automobile, and a tractor) and finances those purchases through different lenders. Should the plaintiff be able to join all the sellers and lenders in a single action, alleging that each wronged him in a series of similar transactions that happened to violate the same provision of Alabama lending law? It is easy to determine that in this illustration, the plaintiff cannot join the various entities he seeks to sue in one action because his claims do not *304 arise from the same transaction or series of transactions. Although the State's transactions with the pharmaceutical companies have more similarities than the transactions in this hypothetical, they clearly are not the same transaction or a series of transactions with a logical relationship. We hold, therefore, that the State's joinder of the 73 companies was improper because coincidental, but not coordinated, business transactions giving rise to separate economic losses do not constitute a series of transactions as contemplated by Rule 20. Thus, the trial court erred when it denied the motions to sever filed by the various pharmaceutical companies.
Having found that the trial court erred in allowing the joinder of the 73 pharmaceutical companies, we have two options under Rule 21.[5] We can order that claims against all defendants other than the first-named defendant, Abbott Laboratories, Inc., be dismissed, or we can order that misjoined parties be severed and proceeded against separately. We opt for the latter course of requiring severance for separate proceedings, thereby avoiding any unfair advantage that might obtain by reason of applicability of defenses of limitations if we ordered dismissal. See DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir.2006), in which the United States Court of Appeals for the Third Circuit stated:
"The effect of each option [under Fed. R.Civ.P. 21] is quite different. When a court `drops' a defendant under Rule 21, that defendant is dismissed from the case without prejudice. Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir.1979); see also Elmore v. Henderson, 227 F.3d 1009, 1011-12 (7th Cir.2000) (Posner, J.). When that occurs, the `statute of limitations is not tolled' because we treat the initial complaint `as if it never existed.' Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir.2005) (internal quotation marks omitted). But when a court `severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n. 6 (3d Cir.1999); Elmore, 227 F.3d at 1012. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period. Id."
(Footnote omitted.)
Because we are reversing the trial court's order denying Novartis's motion for severance, we must vacate the trial court's order creating four groups or "tracks" consisting of 18-19 defendants in each group to "track" and thereby requiring four trials. We do not therefore reach issues relevant to consolidation under Rule 42(a).

IV. Conclusion

For the reasons previously stated, we conclude that the State has misjoined the various pharmaceutical companies because the State's claims against them do not arise out of the same transaction or series of transactions. We therefore grant Novartis's petition for a writ of mandamus and direct the trial court to vacate its order denying Novartis's motion to sever. We further direct the trial court to sever the claims against all companies, leaving as the defendant in this action only Abbott *305 Laboratories, Inc., the first-named defendant in the underlying action.[*]
PETITION GRANTED; WRIT ISSUED.
SEE, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
COBB, C.J., and LYONS, J., concur specially.
LYONS, Justice (concurring specially).
I concur fully in the main opinion. I write specially to make some observations about the prospect for further proceedings after severance invoking Rule 42(a), Ala. R. Civ. P., leading to an order of consolidation. The availability of consolidated trials under Rule 42(a) after a finding of misjoinder under Rule 20 is well settled. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2382 n. 14 (2d ed.1995). On remand, the trial court will be guided solely by Rule 42(a), not Rule 20(b), in determining the extent to which some number of trials less than 73 might be appropriate in this case.
Should the trial court grant relief pursuant to Rule 42(a), whether the same parties will be back before us on another petition for a writ of mandamus may well depend upon the manner in which the trial court deals with consolidation. In the proceedings that led to the present petitions, the trial court, as best I can determine, announced that there would be four trials consisting of four tracks of defendants. The trial court then sought the assistance of two special masters, placing them in what appears to be a procrustean bed of four trials. The special masters' report and any bases therein for selecting the parties for the four trials was not made available to the parties. The trial court entered an order based upon the report in which it created four tracks of defendants without identifying its rationale for clustering various defendants in the various tracks.
The validity of the prior order of consolidation is not before us because we have found a misjoinder of parties, necessitating our setting aside the trial court's order. I will not speculate on the result that might have been reached had it been necessary to address the order of consolidation. Suffice it to say that, upon remand, a more transparent proceeding not so ostensibly lacking in a principled basis would better serve the ends of justice. For example, if the trial court once again seeks the input of special masters, its announcement of the number of tracks without stating any basis therefor before the masters' participation, its failure to disclose to the parties the recommendation of the masters, and its failure to identify the reasoning upon which any clusters of defendants are created for resolution of this proceeding in any order calling for fewer than 73 trials will substantially increase the State's burden in sustaining its protestations against this Court's micromanagement of the trial court's exercise of discretion should there be a subsequent mandamus proceeding challenging consolidation.
COBB, C.J., concurs.
NOTES
[1] The petitions for the writ of mandamus filed by the other 43 companies have not been consolidated with Novartis's petition. Because, however, each company presents similar arguments, we ordered one company to file a response to the State's answer and brief.
[2] Federal cases construing the Federal Rules of Civil Procedure are persuasive authority in construing the Alabama Rules of Civil Procedure, which were patterned after the Federal Rules of Civil Procedure. Borders v. City of Huntsville, 875 So.2d 1168, 1176 n. 2 (Ala. 2003).
[3] We are not here confronted with the situation of multiple acts inflicting an ongoing personal injury by different tortfeasors who are not acting in concert. See, e.g., Federal Practice and Procedure § 1653 ("Illustrative of the liberal approach to the concept of same transaction or occurrence employed by many federal courts are cases in which the court permits an injured plaintiff to join both the original tortfeasor and a second tortfeasor whose subsequent negligence aggravated plaintiff's original injuries.").
[4] See note 3.
[5] Rule 21, titled "Misjoinder and Nonjoinder of Parties," states:

"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."
[*] Note from the reporter of decisions: On the same day the Court released this opinion, it also granted the petitions and issued the writs of mandamus in the other 43 cases "on the authority of Ex parte Novartis Pharmaceuticals Corp." See note 1. The decisions in those cases will appear on a list of decisions without opinions.