SMITH, Justice.
In two separate petitions, Par Pharmaceutical, Inc., and Mylan Inc. (formerly known as Mylan Laboratories, Inc.), Mylan *769 Pharmaceuticals Inc., and UDL Laboratories, Inc., petition this Court for a writ of mandamus, asking us to vacate an order of the Montgomery Circuit Court that consolidates for a single trial under Rule 42, Ala. R. Civ. P., the cases filed against the petitioners by the State of Alabama as a part of cases the State has filed against multiple pharmaceutical companies. See generally AstraZeneca LP v. State, 41 So.3d 15 (Ala.2009). We deny the petitions.

Facts and Procedural History

This opinion represents the fourth opinion from this Court addressing some aspect of the underlying litigation by the State against the pharmaceutical companies. See Ex parte Novartis Pharm. Corp., 975 So.2d 297 (Ala.2007) (“Novartis I ”); Ex parte Novartis Pharm. Corp., 991 So.2d 1263 (Ala.2008) (“Novartis //”); and AstraZeneca, supra. The following background as stated in Novartis II is relevant to the present petitions:
“This action is part of the Alabama Medicaid Pharmaceutical average wholesale price (‘AWP’) litigation, in which the State has sued 73 pharmaceutical companies, including AstraZeneca [AstraZ-eneca LP and AstraZeneca Pharmaceuticals LP], GSK [SmithKline Beecham Corporation d/b/a GlaxoSmithKline], and Novartis [Pharmaceuticals Corporation]. According to Novartis, the State alleges that each pharmaceutical company independently ‘engaged in false, misleading, wanton, unfair, and deceptive acts and practices in the pricing and marketing of their prescription drug products’ by reporting false pricing benchmarks and by failing to disclose to Alabama Medicaid the discounts or rebates made available by the pharmaceutical companies to Alabama physicians and pharmacies who dispensed the drugs (‘the providers’). Novartis’s petition at 2-3. The State asserts that [the] Alabama Medicaid [program] relied on these allegedly false disclosures and deceptive nondisclo-sures, and that, as a result, Alabama Medicaid compensated the providers more for the prescription drugs than the drugs actually cost the providers. Id. Thus, according to the State, these fraudulent practices by the pharmaceutical companies caused the State to overpay for Medicaid prescription drugs. The State alleges that each defendant pharmaceutical company marketed this profit margin or ‘spread’ (the difference between what the providers actually paid for the drugs and the amounts reimbursed to providers by Alabama Medicaid) to the providers to encourage them to use that company’s products rather than those of its competitors. See generally Novartis I, 975 So.2d 297.
“Originally, the State brought a single action against all 73 defendant pharmaceutical companies. Many of the defendant pharmaceutical companies moved to sever the claims against them from those of the other defendants; however, the trial court summarily denied the motions to sever. Forty-four defendant pharmaceutical companies filed mandamus petitions in this Court challenging the trial court’s ruling on the severance issue; those petitions resulted in the opinion in Novartis I. At issue in Novartis I was whether joinder of all 73 defendants in a single action was improper under Rule 20(a), Ala. R. Civ. P., which permits joinder of multiple defendants in a single action when the two requirements of Rule 20(a) are met. First, ‘the plaintiff must assert against each defendant a “right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences,” ’ and, second, ‘there will arise in the action “any question of law or fact common to all defendants.” ’ Novartis I, 975 So.2d at 299 *770 (quoting Rule 20(a), Ala. R. Civ. P.). In Novartis I, this Court found that the joinder of all the defendants was improper because the facts of the case did not satisfy the first requirement of permissive joinder. We concluded that the State was not asserting a right to relief against all defendants arising out of the same transaction or occurrence; rather, the State was suing each defendant pharmaceutical company for independently committing logically unrelated, yet ‘coincidentally similar,’ fraudulent acts that were not part of a conspiracy or a series of coordinated transactions or occurrences. Novartis I. Because the State’s claims against the pharmaceutical companies did not satisfy the first requirement of permissive joinder, this Court did not reach the second requirement; thus, it did not decide in Novartis I whether ‘any question of law or fact common to all defendants [would] arise in the action.’ See Ala. R. Civ. P. 20(a).
“Justice Lyons concurred specially in Novartis I and was joined by Chief Justice Cobb; he noted that the Court’s finding of misjoinder in Novartis I did not preclude the prospect of consolidated trials under Rule 42(a), Ala. R. Civ. P. Rule 42(a) vests trial courts with the discretion to order a joint trial ‘of any or all the matters in issue’ in ‘actions involving a common question of law or fact,’ whether or not the right to relief asserted by the plaintiff against all defendants arises out of the same transaction or occurrence. Ex parte Flexible Prods. Co., 915 So.2d 34, 43 (2005). Justice Lyons encouraged the trial court to consider, in response to Novartis I, ‘the extent to which some number of trials less than 73 might be appropriate,’ 975 So.2d at 305, but cautioned the trial court against the opaque manner in which it had arrived at an earlier ‘consolidation’ order grouping the defendant pharmaceutical companies into four tracks for trial:
“ ‘In the proceedings that led to the present petitions, the trial court, as best I can determine, announced that there would be four trials consisting of four tracks of defendants. The trial court then sought the assistance of two special masters, placing them in what appears to be a Procrustean bed of four trials. The special masters’ report and any bases therein for selecting the parties for the four trials was not made available to the parties. The trial court entered an order based upon the report in which it created four tracks of defendants without identifying its rationale for clustering various defendants in the various tracks.
“ ‘The validity of the prior order of consolidation is not before us because we have found a misjoinder of parties, necessitating our setting aside the trial court’s order. I will not speculate on the result that might have been reached had it been necessary to address the order of consolidation. Suffice it to say that, upon remand, a more transparent proceeding not so ostensibly lacking in a principled basis would better serve the ends of justice. For example, if the trial court once again seeks the input of special masters, its announcement of the number of tracks without stating any basis therefor before the masters’ participation, its failure to disclose to the parties the recommendation of the masters, and its failure to identify the reasoning upon which any clusters of defendants are created for resolution of this proceeding in any order calling for fewer than 73 trials will substantially increase the State’s burden in sustaining its protestations against *771 this Court’s micromanagement of the trial court’s exercise of discretion should there be a subsequent mandamus proceeding challenging consolidation.’
“Novartis I, 975 So.2d at 305 (Lyons, J., concurring specially).
“After this Court issued its opinion in Novartis I, the trial court ordered a joint trial of AstraZeneca LP and As-traZeneca Pharmaceuticals LP, to begin on February 11, 2008. AstraZeneca did not object to the order scheduling the joint trial of the State’s claims against it. Subsequently, the State moved the trial court to consolidate the AstraZeneca trial with 14 similar fraud cases against other defendant pharmaceutical companies, including GSK and Novartis. The various defendant pharmaceutical • companies opposed the State’s consolidation motion, and the trial court conducted a hearing on the motion. After the hearing, the trial court issued a nine-page order that granted the State’s motion in part and consolidated the trial of the State’s claims against AstraZeneca with the trials of the State’s claims against GSK and Novartis.... The trial court denied the State’s consolidation motion as to the remaining 12 pharmaceutical companies the State had sought to join in a single trial.
“AstraZeneca, GSK, and Novartis (collectively ‘the pharmaceutical manufacturers’) each petitioned this Court for the writ of mandamus directing the trial court to vacate its order consolidating the cases.... ”
Novartis II, 991 So.2d at 1267-70 (footnotes omitted).
ín Novartis II, this Court held that the trial court had not exceeded its discretion in consolidating for trial the claims against GSK and Novartis.[1] We first held that there were common questions of law and fact in the State’s fraudulent-misrepresentation and fraudulent-suppression claims against GSK and Novartis. Specifically, we noted, as to the fraudulent-misrepresentation claim:
“The factual basis of the State’s fraudulent-misrepresentation claim against the pharmaceutical manufacturers is that they ‘reported or caused to be reported AWP [average wholesale price], WAC [wholesale acquisition cost], and Direct Price for their products ... for publication and dissemination to state Medicaid agencies such as Alabama Medicaid.’ State’s second amended complaint, Appendix, Vol. 1 at Exhibit 1, at 38. The State asserts that ‘Alabama Medicaid reasonably relied on the false pricing data in setting prescription drug reimbursement rates and making payment on such rates.’ State’s second amended complaint, Appendix, Vol. 1 at Exhibit 1, at 38. Thus, it appears that in this case there will be a common question of fact as to whether the pricing information published in the third-party publications was material and whether the State, in fact, relied on that information. Although the other elements of the State’s claim may ‘produce proof pertaining to individual actors and actions,’ Novartis’s petition at 11, whether the prices submitted to and published in the third-party publications were material and whether the State relied on the third-party publications in calculating the amounts to reimburse the pro *772 viders appear to be questions common to both GSK and Novartis.”
991 So.2d at 1275.
As to the fraudulent-suppression claim, we stated:
“The State specifically alleges that the pharmaceutical manufacturers ‘voluntarily undertook to report or cause to be reported AWP, WAC, and Direct Price for their products ... for publication and dissemination to state Medicaid agencies including Alabama Medicaid’ and that they ‘had a duty under the particular circumstances to provide accurate and complete AWP, WAC, and Direct Price information.’ State’s second amended complaint, Appendix, Vol. 1 at Exhibit 1, at 39. In its answer, GSK admits that it ‘distributes, markets or sells certain prescription drugs that are reimbursed by Alabama Medicaid’ and that ‘from time to time, GSK provided price communications to third party publications which contained “WACs” [wholesale acquisition costs] or similar list prices for wholesalers for certain of its drugs.’ GSK’s answer, Appendix, Vol. 1 at Exhibit 4, pp. 7 and 19. Similarly, Novartis admits that ‘it distributes, markets or sells ... prescription drugs that are reimbursed by Alabama Medicaid’ and that ‘from time to time during the relevant period, Novartis provided price lists to third party publications which contained, inter alia, “AWPs” [average wholesale prices] and “WACs” [wholesale acquisition costs] for certain of its drugs-’ Novartis’s answer, Appendix, Vol. 1 at Exhibit 3, pp. 6 and 12.
“ ‘[T]he existence of a duty is a question of law to be determined by the trial judge. State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 839 (Ala.1998). Thus, it appears that there is a common question of law as to whether the pharmaceutical manufacturers, in participating in Alabama’s Medicaid program and reporting prescription drug prices to the third-party reporting services, had a duty to accurately disclose their prescription drug prices to the third-party publications.
“Similarly, it appears that common to both actions on this claim is the question whether the State, in fact, acted to its injury with regard to the information provided to the third-party publications.”
991 So.2d at 1276.
We rejected the pharmaceutical companies’ alternative argument that consolidation was “inappropriate because, they sa[id], the consolidation [would] prejudice the parties, confuse the jury, and waste judicial resources.” 991 So.2d at 1277. We concluded that under the particular circumstances, “any prejudice and/or confusion [could] be avoided or minimized by careful trial management.” 991 So.2d at 1280.
The present petitions involve the State’s claims against Par Pharmaceutical, Inc. (“Par”), and Mylan Inc. (formerly known as Mylan Laboratories, Inc.), Mylan Pharmaceuticals Inc., and UDL Laboratories, Inc. (“UDL”) (collectively “Mylan”). ' As noted above in Novartis II, the State’s second amended complaint sets forth the same basic allegations against the 73 pharmaceutical companies. Both Par and My-lan were named as defendants in that complaint; thus, the basic allegations against the defendants in Novartis II appear to be the same basic allegations against Par and Mylan.
On March 30, 2010, the trial court ordered, under Rule 42(a), Ala. R. Civ. P., consolidation of the actions against Par and Mylan. On April 15, 2010, Par and Mylan separately petitioned this Court for the writ of mandamus, asking us to vacate *773 the trial court’s consolidation order and to stay all proceedings in this matter in the trial court. On April 27, 2010, Par and Mylan filed summary-judgment motions in the trial court. On May 12, 2010, the State filed a brief and materials in opposition to those motions, and on May 18, 2010, the trial court held a hearing on the pending summary-judgment motions. On May 25, 2010, this Court stayed all proceedings in the trial court.

Standard of Review

“““Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’
“Novartis I, 975 So.2d at 299 (quoting Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003), quoting in turn Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). ‘ “ ‘In cases involving the exercise of discretion by an inferior court, [the writ of] mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion, except in a case [where the trial court exceeds its discretion].’ ” ’ Ex parte Monsanto Co., 794 So.2d 350, 351-52 (Ala.2001) (quoting Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala.1989), quoting in turn Ex parte Edgar, 543 So.2d 682, 685 (Ala.1989)).”
Novartis II, 991 So.2d at 1270.

Discussion

I.

Par and Mylan argue first that based on this Court’s decision in AstraZ-eneca, a common question of law or fact no longer exists because AstraZeneca, they contend, considered the reliance and causation issues central to the State’s misrepresentation and fraudulent-suppression claims and found them without merit based on the documentary evidence in As-traZeneca detailing the State’s knowledge, policy decisions, surveys, and calculations. That evidence in AstraZeneca, this Court held, conclusively demonstrated that “the State determined for itself the appropriate reimbursement formulas based on its own surveys and calculations,” 41 So.3d at 33, and therefore “[t]he State failed to produce substantial evidence that it reasonably relied on the misrepresentations and/or fraudulent suppression it alleged AstraZeneca, GSK, and Novartis engaged in in these cases.” 41 So.3d at 33. Par and Mylan contend that the same evidence regarding the State’s conduct will be admissible in the underlying actions and will be dispositive of the State’s claims against them.
In response, the State asserts generally that AstraZeneca is limited to its particular facts. However, the State focuses its arguments primarily on whether Par’s and Mylan’s arguments — and the ultimate relief they seek of a declaration from this Court that the AstraZeneca decision disposes of the State’s claims against Par and Mylan — are properly reviewable on a petition for the writ of mandamus. The State contends that Par’s and Mylan’s arguments as to the applicability of the AstraZ-eneca decision are “summary-judgment arguments” — i.e., arguments that would be better addressed by the trial court when it rules on the pending summary-judgment motions.[2] The State argues that the peti *774 tions in this Court are an attempt to perform “an end-run on the summary-judgment process and violate[] the rule that this Court will not review on mandamus the denial of summary judgment (which has not yet even occurred).” (State’s answer, p. 12.) Further, the State contends: “If the trial court ruled in favor of Mylan and Par on summary judgment, there would have been no need for a mandamus petition by them. If the trial court ruled against them, then they would have had no legal grounds to seek mandamus.” (State’s answer, p. 4.) In their petitions to this Court, Par and Mylan acknowledged that although they had not yet done so, they would file motions arguing that the decision in AstraZeneca entitles them to a summary judgment. As noted above, since petitioning this Court for mandamus but before this Court stayed the proceedings in the trial court, both Par and Mylan indeed have moved for a summary judgment. At the time this Court stayed the trial-court proceedings, the trial court had not yet ruled on those motions.
The parties in the present petitions have attached as exhibits the pending summary-judgment motions and the State’s responses, and we express no opinion as to the merits of the matters raised in those materials. We do note, however, that it is clear from those materials as well as the other materials before us that the parties vigorously dispute whether the AstraZeneca decision disposes of the State’s claims in the underlying cases.[3]
The State correctly points out that a denial of a motion for a summary judgment is, with limited exceptions not applicable here, not reviewable on a petition for *775 the writ of mandamus. In Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala.2002), we stated:
“Subject to certain narrow exceptions not applicable here, we have held that, because an ‘adequate remedy’ exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus. See Ex parte Jackson, 780 So.2d 681, 684 (Ala.2000) (quoting Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998), quoting in turn Ex parte Central Bank of the South, 675 So.2d 403 (Ala. 1996), for the general rule that ‘ “ ‘a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment,’ ” ’ but noting that narrow exceptions exist, such as in cases involving governmental immunity); Ex parte Newco Mfg. Co., 481 So.2d 867, 870 (Ala.1985) (‘In its Mandamus petition as addressed to its motion for summary judgment based on the statute of repose contained in the Tennessee products liability act, Newco seeks “to do by mandamus that which can be done on appeal.” ’ (quoting Ex parte South Carolina Ins. Co., 412 So.2d 269 (Ala. 1982))); see also Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527 (Ala.2001) (issuing writ of mandamus to reverse an order denying a motion to dismiss asserting defense of immunity); Ex parte Alabama Dep’t of Forensic Sciences, 709 So.2d 455 (Ala.1997) (permitting review by petition for a writ of mandamus in case involving immunity). Because the relief Liberty National seeks in its mandamus petition can be adequately attained by an appeal, Liberty National is not entitled to a writ of mandamus to review the denial of its motion.”
825 So.2d at 761-62 (emphasis added). See also Ex parte Griffin, 4 So.3d 430, 435 (Ala.2008) (“Generally, the denial of a motion for a summary judgment is not reviewable by a petition for a writ of mandamus.”).
We agree with the State that the instant petitions are analogous to a petition for the writ of mandamus seeking review of the denial of a motion for a summary judgment. If the AstraZeneca decision indeed is dispositive of the State’s claims against Par and Mylan — a question as to which we express no opinion here — and the trial court rules erroneously on that issue, Par and Mylan will be able to obtain adequate relief by an appeal. To the extent that Par and Mylan are asking us to create a new exception to the rule that we do not review such questions on a petition for the writ of mandamus, we decline the request. Moreover, the underlying proceedings have not progressed to the procedural stage at which such a review on the merits would be possible, nor is the evidentiary record in the present petitions developed sufficiently for us to review the substantive merits of Par’s and Mylan’s contentions regarding the applicability of AstraZeneca to the underlying eases.
Thus, Par and Mylan have not demonstrated that they are entitled to the writ of mandamus on the alleged basis that AstraZeneca is dispositive of the State’s claims against them. See Ex parte Liberty Nat’l, supra; Ex parte Griffin, supra. See also Novartis II, 991 So.2d at 1280 (“ ‘ “This Court does not issue the writ of mandamus based on mere speculation as to the possible occurrence of future events.” ’ ” (quoting Ex parte Flexible Prods. Co., 915 So.2d 34, 41 (Ala.2005), quoting in turn Ex parte Vance, 900 So.2d 394, 398-99 (Ala.2004))).

II.

Par and Mylan contend that the trial court exceeded its discretion in find *776 ing the existence of a common issue of law or fact. In Novartis II, we stated:
“Rule 42(a), Ala. R. Civ. P., provides: “‘When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.’
‘“We have said that “[cjircuit judges have broad powers under the Alabama Rules of Civil Procedure ... to order actions consolidated.” ’ Ex parte Flexible Prods. Co., 915 So.2d at 39 (quoting State v. Reynolds, 887 So.2d 848, 854 (Ala.2004)). ‘[Rule 42(a) ] specifically recognizes the propriety of consolidation, as well as the trial court’s discretion to order consolidation as necessary to reduce costs or delay.’ Owens-Coming Fiberglass Corp. v. James, 646 So.2d 669, 674 (Ala.1994).”
991 So.2d at 1274. We then stated the following regarding the existence of a common question of law or fact:
“Rule 42(a) permits joint trials when the cases share ‘a common question of law or fact.’ Ala. R. Civ. P. 42(a). One of either — law or fact — will suffice as the basis for invoking the rule. See also 33 Fed. Proc., L.Ed. § 77:44 (1995) (‘Actions involving the same parties are likely candidates for consolidation, but a common question of law or fact is enough; if a common question exists, courts often consolidate actions despite differences in parties.’); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2382 (3d ed. 2008) (‘The existence of a common question by itself is enough to permit consolidation under Rule 42(a), [Fed. R.Civ.P.,], even if the claims arise out of independent transactions.’). Further, consolidation under Rule 42 does not require that common issues predominate over other issues. See Ex parte Flexible Prods. Co., 915 So.2d at 42 (‘Moreover, we reject the argument presented by the defendants that the propriety of the [case-management order] rests upon a determination of whether any common issues “predominate” over the other issues in the actions to be consolidated. A weighing of the relative dominance of the particular issues presented by actions to be consolidated (an exercise that would be speculative in actions such as this where the common issues have yet to be framed) is not required by Rule 42.’).”
991 So.2d at 1277.
In its consolidation order, the trial court found the following common issues of fact and law in the actions against Par and Mylan:
“• That each defendant allegedly participates in Alabama’s Medicaid program;
“• That each defendant allegedly reported the prices for its drug(s) at issue to First DataBank (‘Blue Book’) and Medical Economics, Inc. (‘Red Book’);
“•That each defendant allegedly knew that Alabama Medicaid relied upon and utilized the prices reported by such defendant to Blue Book and Red Book as the basis to reimburse providers making Medicaid claims;
“•That each defendant allegedly gave undisclosed discounts, rebates, and other inducements to medical providers (which had the effect of lowering the actual wholesale or sale price charged to its customers);
“• That each defendant allegedly falsely reported inflated prices to Blue Book *777 and Red Book and allegedly concealed its actual, lower prices;
“•That each defendant allegedly knew that its price reporting would result in Alabama Medicaid paying excessive amounts for reimbursement of those drugs;
“• That Alabama Medicaid allegedly relied upon each defendant to report its prices in a truthful manner to the price reporting services used by Alabama Medicaid to reimburse providers;
“• That each defendant’s alleged wrongful reporting of price information resulted in monetary damages to the State.”
Par and Mylan focus primarily on Par’s contention that it did not routinely report its wholesale acquisition costs (“WACs”) to third-party publishers.[4] Par and Mylan point out that in Novartis II both GSK and Novartis admitted that they provided information to third-party publishers. See Novartis II, 991 So.2d at 1276 (“GSK admits that .... ‘from time to time, GSK provided price communications to third party publications which contained “WACs” [wholesale acquisition costs] or similar list prices for wholesalers for certain of its drugs.’ ... Similarly, Novartis admits that .... ‘from time to time during the relevant period, Novartis provided price lists to third party publications which contained, inter alia, “AWPs” [average wholesale prices] and ‘WACs” [wholesale acquisition costs] for certain of its drugs....’”). If indeed this difference between the reporting practices of Mylan and Par exists,[5] we disagree that it means that the trial court exceeded its discretion in finding a common issue of law or fact under Rule 42(a), Ala. R. Civ. P., at this stage in the proceedings.
In addition to the above-listed common issues of law or fact, the trial court in another part of its order noted:
“Evidence concerning the reimbursement formulas and the State’s purported use and/or reliance on defendants’ reported prices will not differ among [My-lan and Par] as each defendant either reported, caused to be reported or engaged in conduct with a reckless disregard to the truth of the prices allowed to be published for its drugs to First DataBank, which, in turn, transmitted the prices to Alabama Medicaid for its use.”[6]
(Emphasis added.) The trial court’s order also states that the State plans to present as to all defendants (1) the same expert testimony at trial and (2) the same model and methodology for proving its alleged damage. Further, the trial court’s order notes that both Par and Mylan have asserted common affirmative defenses to the State’s claims.[7] The trial court also found *778 it particularly significant that both Par and Mylan “manufacture!!], distributee], market!! ], and/or offer[ ] for sale almost exclusively generic prescription drugs” (emphasis added). Based on the foregoing, the trial court did not exceed its discretion in finding the existence of a common issue of law or fact under Rule 42(a), Ala. R. Civ. P.
Par and Mylan contend alternatively that even if the State’s cases against them present a common question of law or fact, consolidation is inappropriate because, they say, the consolidation will prejudice the parties, confuse the jury, and waste judicial resources. In support of their contentions, Par and Mylan make the following contentions:
— “The State’s claims against Par and its separate claims against Mylan would take multiple weeks to try, and it is likely that the volume of evidence presented during that time would overwhelm the jury’s ability to give full and fair consideration to the evidence presented against and by each defendant.” (Par’s petition, p. 24.)
— The State’s allegations against Par relate to the pricing and marketing of 23 drugs associated with 158 unique “National Drug Code” numbers (“NDCs”). According to Par, each of its drugs “was priced and marketed in light of competitive pressures and other variables in each individual product market.” (Par’s petition, p. 8.) Thus, the number of distinct NDCs for drugs Par priced and marketed represents roughly 20% of the NDCs involved in the State’s claims against Par and Mylan.
— The State’s allegations against My-lan relate to 153 separate drugs, associated with 633 distinct NDCs. Thus, the number of distinct NDCs for drugs that Mylan priced and marketed represents about 80% of the NDCs involved in the State’s claims against Par and Mylan. Par asserts that “the presentation of the vastly larger body of evidence against or for Mylan would unfairly dominate the jury’s time and attention. ... Par’s story would be lost in this deluge of evidence.” (Par’s petition, p. 26.)
— As noted above, Par contends that its policy and practice was to not submit WAC pricing for its generic drugs to industry publishers. My-lan, however, supplied the WAC prices for its generic drugs to such publishers.
— Par asserts that “at least seven of the generic drugs at issue in this case were independently marketed and sold by both Par and Mylan. These overlapping drugs — each pair of which shares the same generic name — aggravate the likelihood that the jury would become confused and fail to recall the distinctions between the defendants. No such problem was present when this Court upheld [in Novartis II \ the consolidation of Novartis and GSK — who had no product overlap.” (Par’s petition, p. 27; cf. Mylan’s petition, p. 19.)
The trial court found that consolidation of the trials against Par and Mylan would be “the most efficient and economical disposition of this action.” The trial court rejected as “premature and without merit” Par’s and Mylan’s claims that they would be prejudiced by the consolidation. The *779 trial court cited its own experience in trying the consolidated cases against GSK and Novartis, and it stated that during that the trial of the GSK and Novartis cases
“the jury repeatedly was made aware, from the outset, that there were two separate cases for its consideration. Special notebooks were prepared, special jury instructions were given, exhibits were separately marked, and numerous other precautionary measures were taken to avoid juror confusion.”
The trial court further found that
“not granting the State’s motion to consolidate will prejudice the State in that multiple, individual trials will require the State to present its witnesses and evidence in staggering repetition. Separate trials for each Defendant could take years to complete, would impose tremendous economic burden on the State, and would constitute an onerous and unnecessary burden on the State’s witnesses, as well as third-party witnesses who would be forced to testify repeatedly. Additionally, the Court finds that multiple trials greatly increase the risk of inconsistent rulings on common issues regarding common questions of law and fact.”
The trial court’s stated reasons supporting consolidation are similar to and expand upon the reasons the trial court identified in Novartis II as supporting consolidation.[8] Moreover, in Novartis II the pharmaceutical companies’ contentions were similar to those outlined above; in that case, the pharmaceutical companies argued:
“[T]he trial court exceeded its discretion in ordering a joint trial because ‘a joint trial of claims against [two] individual manufacturers, each of which, over a 15 year period, sold hundreds of different products that were priced, marketed, and reimbursed in different ways will numb jurors to key distinctions among the defendants, their products, and their marketing practices.’ Novartis’s petition at 18. Specifically, the pharmaceutical manufacturers argue that their cases involve hundreds of drugs and that the State’s claims necessitate demonstrating proof regarding intent, falsity, and reliance as to each defendant that will create an inordinately complex evi-dentiary record. They further argue that ‘paralyzed by confusion, jurors will, by default, treat all of the disparate evidence as if it were relevant to all of the defendants. The inevitable prejudice will be substantial.’ Novartis’s petition at 18.
“In support of their argument, the pharmaceutical manufacturers point to statements made by Judge Patti B. Sar-dis, the Boston-based federal district judge handling the multidistrict aspects of the AWP litigation. The pharmaceutical manufacturers note that Judge Sar-dis’s experience ‘led her to conclude that *780 the evidentiary records in [AWP litigation] are simply too complex and confusing for multi-defendant jury trials.’ Novartis’s petition at 14. Similarly, the pharmaceutical manufacturers point to statements of Circuit Court Judge Richard G. Niess of Dance County, Wisconsin, who noted:
“ ‘[I]t is not at all apparent ... that any defendant could have its case fairly considered by the jury if not in a separate trial. Defendants present a compelling argument for insurmountable jury confusion with their proof on differing corporate practices among the defendants, multiple claims against each defendant each consisting of multiple elements and each portending multiple verdict questions both on these claims and defendants’ affirmative defenses.’
“Novartis’s petition at 17. Finally, the pharmaceutical manufacturers note that ‘ “[t]he very purpose of consolidation is to expedite litigation and save money.” ’ Novartis’s petition at 26 (quoting Teague v. Motes, 57 Ala.App. 609, 613, 330 So.2d 434, 439 (Ala.Civ.App.1976)). However, they argue that a consolidated trial does not promote judicial economy because, the pharmaceutical manufacturers say, consolidation will require the trial court and the defense attorneys to spend an inordinate amount of time keeping separate the claims and evidence attributable to the respective defendants and claims. Novartis’s petition at 27. The pharmaceutical manufacturers further argue that ‘separate trials also minimize the threat of long-term inefficiencies in the form of appellate reversals and retrials.’ Novartis’s petition at 28.”
991 So.2d at 1278-80.
We held that these contentions did not demonstrate that the pharmaceutical companies were entitled to the writ of mandamus. We stated:
“In Quintet Corp., N.V. v. Citibank, N.A., 100 F.R.D. 695, 697 (D.C.N.Y. 1983), the federal district court in New York recognized:
“ ‘This type of danger [jury confusion] exists, of course, in many multidefen-dant, multicount trials. It is a tenet of the jury system that jurors follow the court’s instructions and can apply different standards to several defendants. There is nothing extraordinary about these cases, such as inevitably conflicting findings, that would make the danger of confusion paramount.’
“As the Eleventh Circuit Court of Appeals noted in Hendrix [v. Raybestos-Manhattan, Inc., 776 F.2d 1492 (11th Cir.1985) ], the Court must keep in mind ‘the extent to which the risks of prejudice and confusion that might attend a consolidated trial can be alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs’ claims (including the defenses thereto) are submitted to the jury for deliberation.’ Hendrix, 776 F.2d at 1495.
“Although this Court recognizes that the facts and evidentiary record in these cases may be complex, we cannot conclude that the trial court exceeded its discretion when it consolidated these cases for trial. With the trial of AstraZ-eneca already having concluded, the remaining consolidated action has only two defendants, Novartis and GSK, and the State has asserted only four claims against each defendant. Under these circumstances, we agree with the State that any prejudice and/or confusion can be avoided or minimized by careful trial management.”
991 So.2d at 1279-80.
The primary difference between the present petitions and the petitions in No *781 vartis II is that, as discussed above, Par contends that it did not routinely report pricing information to third-party publishers. However, Par concedes that there were at least isolated instances in which its employees provided that information or confirmed its existence. See supra note 5. At this juncture in the proceedings below, we see no reason why the trial court through careful management will not be able to avoid or minimize any prejudice or confusion that might result from the alleged differences in Par’s and Mylan’s reporting policies and practices.
As noted above, the trial court cited, in support of consolidation, its experience in managing the previous trials related to this litigation. Par and Mylan attempt to discredit the trial court’s experience, however, with arguments like the following:
“Previous [average wholesale price] trials have demonstrated that the cases are too complex for case-management tools to mitigate adequately these prospects of jury confusion and prejudice.... In [the GSK/Novartis joint trial] and in the separate AstraZeneca trial, however, the two juries both returned verdicts for the State that this Court later held erroneous as a matter of law.... Thus, two separate juries failed to weigh the evidence properly.”
(Par’s petition, pp. 28-29.) This argument, however, misapprehends what the AstraZeneca decision held. AstraZeneca did not hold, as the petitioners suggest, that the juries “failed to weigh the evidence properly.” Rather, AstraZeneca held that “the State failed to produce substantial evidence that it reasonably relied on the misrepresentations and/or fraudulent suppression it alleged AstraZeneca, GSK, and Novartis engaged in in these cases.” 41 So.3d at 33. Thus, this Court held that the trial court in AstraZeneca should have granted the defendants’ motions for a judgment as a matter of law and that the cases should not have been submitted to the jury for consideration. Id.
Finally, Par asserts that in January 2001 Mylan settled a lawsuit brought against it relating to its version of the drug lorazep-am. Par contends that “if evidence about the settlement were admitted at a consolidated trial involving Par, it would create a substantial risk of ‘guilt by association,’ and work to Par’s prejudice.” (Par’s petition, p. 28.) However, Par concedes that the trial court has not yet even addressed the admissibility of that alleged settlement. Consequently, Par’s argument that it will be prejudiced by evidence of the alleged settlement is speculative at best.

Ill

Both Par and Mylan suggest that this Court should stay the proceedings against them in the trial court pending this Court’s resolution of the appeal that has been filed in this Court in Sandoz, Inc. v. State (No. 1081402). Sandoz, Inc., is one of the defendants named in the State’s second amended complaint. Par and Mylan contend “[a]ny even arguable questions about the applicability of [the evidence in As-traZeneca regarding Alabama Medicaid’s knowledge of drug pricing] to [Alabama Medicaid’s] knowledge of generic drug pricing will be resolved when this Court rules on the pending appeal in” Sandoz. The State contends that this aspect of the trial court’s ruling — i.e., the denial of My-lan’s motion to stay[9] the proceedings pending resolution of the appeal in San- *782 doz — is not reviewable on a petition for the writ of mandamus. For the reasons expressed in Part I of this opinion, we agree with the State that under these circumstances this issue is not appropriate for review on a petition for the writ of mandamus. The stay of the trial court proceedings that this Court ordered on May 25, 2010, is hei-eby lifted.

Conclusion

The petitions for the writ of mandamus are denied.
1090992 — PETITION DENIED; STAY LIFTED.
1090994 — PETITION DENIED; STAY LIFTED.
COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.

. • AstraZeneca’s petition was dismissed as moot because after AstraZeneca filed its petition but before this Court issued the opinion in Novartis II "the trial court proceeded ... with a trial of the State's claims against As-traZeneca alone, without consolidating that trial with the trials of GSK and Novartis and without awaiting this Court’s resolution of these petitions for the writ of mandamus.” 991 So.2d at 1271.

. In its materials opposing the summary-judgment motions, a copy of which the State has provided with its answer to this Court, the State more extensively addresses Par's and *774 Mylan's substantive arguments regarding the applicability of the AstraZeneca decision and cites evidence that it contends distinguishes AstraZeneca. In sum, the State's position as to the applicability of the AstraZeneca decision is that
"[t]he AstraZeneca opinion turned on the factual issue of reasonable reliance based on the specific evidence in that case. Short of trial or a ruling on summary judgment, the evidence against Mylan has yet to be presented or established. Mylan’s petition requests the impossible: that this Court speculate on the evidence to be admitted at trial against Mylan and then hold in advance of trial that the AstraZeneca opinion disposes of any factual issues against My-lan.”

. The State contends, for example, that Par and Mylan are taking inconsistent positions by arguing "on the one hand, that [the cases against them] are separate and distinct cases which cannot be consolidated” but arguing "on the other hand that [the cases] should be considered exactly the same as AstraZeneca and SandozL Inc. v. State (No. 1081402)] for the purposes of claim preclusion.” (State’s answer, p. 19.) In the trial court, the State cited Mylan's earlier contention that there are “significant, substantive differences between the Medicaid reimbursement of brand and generic pharmaceutical products under the rules of die Alabama Medicaid Program.” State’s Opposition to Defendants’ Motion to Vacate or Stay Order Setting Mylan Defendants for Trial on June 14, 2010. Additionally, the State contended that
”[b]ecause Mylan’s drugs are almost entirely generic and not brands, there is no mathematical relationship between the AWP and WAC prices reported by Mylan and used by [Alabama Medicaid] to reimburse pharmacies. Unlike brand drugs where reported AWP prices generally exceed reported WAC prices by either 20% or 25%, there is no such connection between AWP and WAC for generic drugs. That is, there was no rhyme or reason to the percentage markup of AWP over WAC for any particular Mylan drug, and there was certainly no mathematical relationship between Mylan’s AWP and WAC prices across the board. Therefore, even assuming that the State knew that Mylan's reported AWP prices were inflated (which the State did not), it would be absolutely impossible for the State to conclude from such knowledge alone that Mylan's WAC prices were also inflated or to estimate the amount of such inflation.”

Id.

. Mylan admits that it reported its WACs to third-party publishers.

. Par concedes in its petition that it “is aware of isolated occasions on which a Par employee mistakenly provided WACs to, or verified WACs already possessed by, a publisher.” (Par’s petition, p. 9 n. 3.) However, Par contends that its
"evidence would show that, upon learning of such instances, Par would contact the relevant publisher and ask it to remove the Par WAC from its publication. Moreover, such isolated mistakes were irrelevant to [Alabama Medicaid’s] standard, continuously applied reimbursement methodology.”
(Par’s petition, p. 9 n. 3 (emphasis added).)

. This statement from the trial court’s order is consistent with, as Par states in its petition, "the State['s] suggestion] [that] it would seek to hold Par responsible for WACs supplied to First DataBank not by Par, but by ‘somebody else.’ " (Par’s petition, p. 23.)

. The trial court cited the following affirmative defenses: the statute of limitations, the statute of repose, laches, estoppel, waiver, *778 standing, the failure to satisfy federal regulatory requirements, federal preemption, the political-question doctrine, and the filed-rate doctrine.

. In Novartis II, the trial court’s consolidation order stated:
" 'The Court further finds that consolidation of these actions promotes effective case management and avoids needlessly duplica-tive trials. Consolidation of these actions will conserve judicial resources, alleviate unnecessary delay and expense, reduce the burden on witnesses and the parties, and result in the most efficient and economical disposition of these actions. Moreover, the Court finds that the parties will not suffer prejudice as a result of consolidation of the trials of the Consolidated Defendants as these defendants are members of the "Track 1” grouping of cases for trial, originally set for trial in November 2007, and for which the discovery deadline has expired. Finally, the logical grouping of the Consolidated Defendants — all of which manufacture, market and sell brand-name drugs and similarly report prices — minimizes the risk of any prejudice or confusion which could potentially result from consolidation.' ”
991 So.2d at 1278.

. Nothing before us indicates that Par has requested the trial court to stay the proceedings pending resolution of Sandoz.